CHANCERY.

*Case* 101.

*June* 14.

The case stated.

# Henry *vs* Graddy.

APPEAL FROM THE WOODFORD CIRCUIT.

*Specific performance. Rescission.*

JUDGE MARSHALL delivered the opinion of the Court.

THIS bill was filed by Henry, the vendor, against Graddy, the vendee of a valuable tract of land, to enfore a specific execution of the contract, after a failure on the part of the complainant, to make the deed, and complete the delivery of possession, which had been partially, and perhaps principally transferred before. The Court dismissed the original bill, and on the cross bill of Graddy, rescinded the contract, and provided for the assessment of rents, &c. necessary for the final adjustment of the case. Before filing his bill, Henry had executed and tendered to Graddy a proper deed for the land, duly authenticated for record, and had at the same time offered to deliver the entire possession, whenever Graddy would receive it. But this having been done more than seven months after the stipulated day of performance, it is contended, that either by his original failure or subsequent delay, or by both, Henry had lost his right to enforce the contract, in equity, and was concluded by the refusal of Graddy, who had been punctual in tendering performance on his side.

In contracts for land, if it does not appear that the parties intended originally to provide that the failure of either to perform his part at the appointed time, should terminate his right, time is not considered in equity, as constituting so essential a feature of the contract, as that the mere failure of either party in point of time, will, without regard to other circumstances, deprive him of his right to enforce specific execution. The real question in such cases, would seem to be, whether the complainant can, with a good conscience, require performance of the other party, after his own failure, or whether the defendant can, with a good conscience, refuse performance, though there has been a failure in point of time on the part of the complainant. And this question would seem to depend upon the cause and motive of the failure, and upon its attendant circumstances; and especially upon the manner in which it was received, and upon the question whether either party showed, by his subsequent conduct, that he regarded the contract as terminated by the failure, or intended to terminate it on that account, or whether the conduct of both showed, that notwithstanding the failure, they regarded the contract as still continuing, and still to be carried out according to its terms, except in respect to time; with regard to which, they must, in such case, be considered as referring themselves to the rule of good faith, which in the absence of actual agreement, will be indicated by the circumstances of the case. The cases are almost without number, in which the vendee of land, though partially or wholly in default in the payment of the price, has been allowed to enforce performance against the vendor. And there are many cases in which the vendor, after failure on his part, and in some instances after a suit commenced, or a judgment obtained against him on the contract, has been admitted to have an equity for its enforcement.

In the case of *Benedict* vs *Lynch*, (1 *Johnson's Chy. Reps.* 379,) Chancellor Kent, after a full review of the cases says, "the general principle appears to be perfectly established, that time is a circumstance of decisive importance in these contracts, but it may be waived by the conduct of the party; that it is incumbent on the

*Margin notes:*

HENRY
vs
GRADDY.

If it be not the intention of the parties in executory contracts for land, that the failure of either party to perform punctually his part of the contract, shall put an end to it, time is not considered as so essentially important, as to deprive either party of the right to enforce the contract.

Chancellor Kent's opinion in regard to time in the case of *Benedict* vs *Lynch*, (1 *Johnson's Chy. Rep.* 379;) and *Alley*

HENRY
vs
GRADDY.

vs *Deschamp*, (13
*Ves.* 224,) cited
and approved.

plaintiff, calling for specific performance, to show that he used due diligence, or, if not, that his negligence arose from some just cause, or has been acquiesced in, that it is not necessary for the party resisting the performance, to show any particular injury or inconvenience ; it is sufficient, if he has not acquiesced in the negligence of the plaintiff, but considered it as releasing him." And in the case of *Alley* vs *Deschamp*, (13 *Vesy*, 224,) the Lord Chancellor said, "it would be dangerous to permit parties to lie by, with a view to see whether the contract would prove a gaining or losing bargain, and according to the event, either to abandon it, or considering the lapse of time as nothing, to claim a specific performance."

Understanding by the last clause of the foregoing extract from Chancellor Kent's opinion, which puts the acquiscence of the defendant in opposition to his considering himself as released by the plaintiff's failure, that it is not sufficient that he has in his own mind considered that he is or may be released, but that he must show this by his conduct, we think the two extracts contain the true doctrine, as to the regard which should in equity be paid to time, as an ingredient of these contracts, and as to the effect which a failure in respect to time, should have upon the right of the delinquent party to enforce the contract in equity. If there was just cause for his failure and subsequent delay, his equity remains unimpaired. Or if though he be without equitable excuse for his failure, the other party has acquiesced in it, has not shown by his conduct that he considered himself released, but has acted as if he considered the contract as still subsisting, and still to be executed, except in regard to the stipulated time; and if during the continuance of this state of things, or within a reasonable time after he is apprized of its termination, the complainant has tendered full performance, having in the mean time always shown that he regarded the contract as subsisting, and to be executed, and has not waited to see if the bargain would turn out to be a good or a bad one, and if the delay being productive of no capital injury or inconvenience, may be fairly compensated to the other party, and the enforcement of the contract will not be oppressive, the complain-

ant may with a good conscience demand a performance, and the Chancellor will extend his aid in enforcing it.

And why should not this be so? The idea of founding an equity upon the complainant's own neglect or breach of duty, has been made the subject of ridicule. But the question is, whether the party has lost, and not whether he has gained a right by his neglect or breach of duty. He comes into equity not because he has failed in his duty under the contract, for he might have come into equity if he had been punctual and the other party delinquent. He comes in because the other party insisting that by his failure he has forfeited his rights under the contract, refuses his tendered performance. He comes in, alledging in effect, that there is in equity no forfeiture of his right, because his failure was either excusable, or if not excusable, was acquiesced in by the defendant, who having thus waived the forfeiture, could not with a good conscience insist upon it afterwards, but upon a mere default. He comes in, of course, referring himself to the rule of good faith and fair dealing, which equity prescribes; but he comes in, relying also upon that rule as refusing alike to each party the privilege of holding on, or appearing to hold on to the contract, when he has the right to renounce it, but with the secret reservation of the right to abandon it at pleasure, whenever he may find it his interest to do so.

In applying the principles thus developed, to the facts of this case, we are of opinion that there was no just cause, no equitable excuse for the complainant's failure to complete the delivery of possession and make a deed to the defendant on the 25th day of December, 1841, when his contract required him to do these acts, and when Graddy presented himself ready, and offering to make payment of $6,000, and to receive performance from the complainant. But while this failure was not so justified as to leave the complainant's equity unimpaired, it occurred under circumstances which repel the inference that it proceeded from a wanton disregard of duty, or that it was intended as a means either of breaking up the contract or of throwing any obstacle in the way of

its substantial execution. Too much had already been done under the contract, for Henry to expect any advantage by evading its conditions, and it is evident that he had full confidence in Graddy's intention to execute it on his part. At the date of the contract, (in November, 1840,) and according to its terms, the complainant had delivered possession of a large portion of the farm, and had received from Graddy $4,000 of the price. In the interval between that time and the 25th of December, 1841, additional portions of the farm, making altogether about two thirds of the whole, and including all or nearly all of the tillable land, had been delivered to Graddy, and $1,525 of the price had been paid by him, all in anticipation of the requisitions of the contract. But Henry, in part perhaps from supineness, or perhaps relying on the spirit of mutual accommodation and of mutual desire to adhere to the contract, which had been thus exhibited, and trusting perhaps, in some measure, to the courtesy of Graddy, who resided on his own farm in the neighborhood, and did not intend to remove to his new acquisition, and yielding, as is implied in every culpable neglect, to a regard for his own convenience rather than to a sense of the convenience and rights of Graddy, let the day for performance arrive without having made preparation for the removal of his family from the houses which they occupied, and in fact had placed a considerable portion of his property in such a condition that it could not well be removed at once. So that when Graddy came on the day, he was not ready, and told him that he could not then deliver possession of the houses and appurtenant lots, but would pay rent for them until March, when, or as soon as he could get a place for his family, he would complete the delivery of possession and make the deed. He also objected, but without just cause, to the medium of payment offered by Graddy. But as in fact he was not ready when the day came, this objection must be considered as having been laid hold of at the moment, to give color to his request for delay, when it was not acceded to, rather than as being the real cause of his non-performance. It certainly was not suggested as a ground for breaking up the contract, but the contrary was clearly manifested;

and it is evident from the whole tenor of the conversation, that the alternative of immediate performance or rescission was not presented by either party to the other, and it would seem in fact not to have been present to the mind of either. Henry, on his side, not being ready to perform fully, on that day, desired a partial postponement and made various propositions to meet the objections and inconveniences suggested by Graddy, and was unwilling, by making the deed then, as he said, to "put it in Graddy's power to turn his family out of the house immediately." The question seems rather to have been, whether Graddy should pay without full performance, or keep his money until he got full performance. He gave no express assent to any proposition from Henry, but said he would not part with his money unless he got full possession; and thus the parties separated, without having made any arrangement, and without having fixed the 1st of March, or any other time for the execution of the contract.

. But as the impression produced on our own minds by the testimony of all the witnesses who speak of this interview, is that neither party considered the contract as at an end, or intended to abandon it in consequence of what then occurred, so we must also conclude that the conversation and conduct of each, made the same impression on the mind of the other. Graddy in fact says in his answer, that he intended to perform the contract if Henry should perform on his part, by the first of March. But we do not admit that he could at once acquiesce in Henry's failure to perform on the day fixed by the contract, and at the same time without notice to him, reserve in his own mind the right of coercing or abandoning the contract if it was not performed by a certain day. He had no right thus to speculate on events, and to hold Henry bound while he himself was free. And if it be said that his conduct on the day of the interview did not clearly indicate acquiesence in Henry's failure, and that he might, on the next day have rescinded the contract, still as he not only continued in possession of two thirds of the farm, but after that interview either commenced or continued the clearing of a lot of ten or twelve acres of timbered land, which was not delivered at the date of

When the vendor failed to deliver entire possession at the time agreed on, having given it in part before, and vendee refused to part with his money until full possession was given, and the conduct of neither party evinced a disposition to abandon the contract, but to execute it, held that vendor might have a specific execution.

HENRY
vs
GRADDY.

the contract, and went on in January and February, to take up large notes upon Henry, with his assent, and obviously to be used as part payment of the $6,000, there is no doubt not only that he did acquiesce, but that Henry so understood his conduct; and as he continued to use and cultivate the land, including the lot which he had cleared, and all which he had received into possession, after the first day of March, without any intimation that he had expected full performance on that day, and without any notice that he should require it at any fixed time; as even in April he received a proposition from Henry for permission to remain in possession on rent, until Christmas, and answered it in such a way as showed that he still considered the contract as subsisting, and that he had rightfully the control of the land; as in fact this state of things continued until about the time when the deed was tendered and the possession offered, we are of opinion that Graddy, who had then brought no suit, was bound to take the deed and the possession, and to execute the contract on his part on equitable terms.

When the facts show that both vendor and vendee considered and treated the contract as still subsisting, although possession of the entire purchase was not surrendered as agreed upon, and the inconvenience and damages arising therefrom could be fully compensated out of the purchase money unpaid; Held that a rescission was not proper, on the ground that vendor had been in default.

It is true that before this tender, the land had fallen in value, from ten to fifteen dollars below what it was on the 25th day of December, 1841, and the medium of payment under the contract, had appreciated to its par value. But as Henry was certainly bound by the contract during all this period, and there is no sufficient ground to suppose that he thought he was not, but he showed, from time to time, that he considered the land as Graddy's, and himself as occupying under him; and as on the contrary, Graddy believed that it was in his power to abandon or enforce the contract at pleasure, the fair inference from all the facts is, that while this change in the value of the contract undoubtedly quickened Henry's perception of the necessity of action on his part, as a means of preventing a rescission, and perhaps a sacrifice, it was the actual cause of Graddy's determination to repudiate the contract. And as, moreover, it appears that after the tender and refusal of the deed, and during the progress of the suit, the land has appreciated and nearly approximated to its former value; as it is evident that the inconvenience to Graddy from not getting the possession on the 25th of

December, and until it was offered, was comparatively slight, may not have been the real ground of his refusal, and that whatever injury he has sustained may be easily compensated out of the purchase money still payable, it seems to us that all the conditions requisite for making out an equity on the part of the complainant to have a specific execution, are sufficiently established, and that the Court erred in dismissing his bill, and in rescinding the contract on Graddy's cross bill.

Wherefore, the decree is reversed and cause remanded, with directions to perpetuate the injunction to Graddy's judgments obtained on Henry's notes assigned to him as aforesaid, and also the injunction to Graddy's suit at law, upon the contract of sale; to ascertain and apply as on the 4th of August, 1842, when the deed and full possession were tendered by Henry, and when the instalment of $6,000 should have been paid or settled, the proper credits arising from payments made thereon, and also from said notes and judgments, including interest up to said day, and costs, and also to ascertain and apply as credits on the same day, the reasonable rent of so much of the premises sold as was not delivered to Graddy on or before the 25th day of December, 1841, to be charged upon such portions as were retained by Henry, so long as the same has remained or may remain in his possession; and also to ascertain, should Graddy desire it, the special damage, if any, sustained by him and not compensated by the rents aforesaid, and by the adjustment of interest as above provided, and by comparison of the extent of the possession received by him after the date of the contract, with the payment of $1,525 made before it was due; the amount of such damages, if any, to be also applied as a credit on 'the said 4th day of August; and should any balance appear in favor of Graddy upon applying these credits to the said instalment of $6,000, as due on the 4th of August, to apply such balance as a credit of the same date, on the instalment due on the 1st day of May, 1842; and for final decree according to the principles of equity and of this opinion.

*Woolley and Johnson* for appellant: *Morehead & Reed and Cates & Lindsey* for appellee.