## MELTON v. SMITH, APPELLANT.

1. **Title Bond:** ASSIGNMENT. The obligee in a bond for title to land has such an interest as may be assigned. and this both by virtue of the statute (2 Wag. Stat. 999, ? 2,) and independent of that statute.

2. **Laches:** ABSENCE IN CONFEDERATE STATES DURING THE WAR. Failure to sue until August, 1866, for specific performance of a contract to convey land, which matured in June, 1861, will not be deemed laches on the part of the plaintiff, when it appears that at the latter date he was driven by threats of assassination from his home in a section of the State then disturbed by war, and was compelled to take refuge and reside within the Confederate States until the war was over.

3. **Specific Performance:** ABANDONMENT OF CONTRACT; EVIDENCE. In a suit to compel specific performance of a contract to convey land, evidence of mere verbal declarations of the plaintiff that he intended to abandon the contract, should be receceived with great caution.

4. **Time not of the Essence of a Contract:** WAIVER. A court of equity will not treat time as of the essence of the contract, where the parties themselves have not so treated it. Even where it is of the essence, it may be waived.

5. **Laches:** RESCISSION. If one of several joint obligors in a title bond for land, becomes unable to convey according to the contract, failure on the part of the obligee, during the continuance of such disability, to assert his rights, will not be imputed to him as laches; nor will such failure authorize a co-obligor, who is under no such disability, to rescind the contract so far as it concerns himself.

6. **Rescission of Contracts.** The right to rescind must be promptly exercised, otherwise it will be deemed waived, and the intention to rescind must be shown by some overt act or outward manifestation.

7. **Estoppel.** One, who by his statements and conduct, induces another to purchase an interest in land, will not afterwards be heard to deny the existence of such interest.

*Appeal from Moniteau Circuit Court.*—HON. T. M. RICE, Judge.

*T. W. B. Crews & Charles M. Napton* for appellant.

The points relied on by the defendant to defeat a specific performance, are as follows:

1 *a.* The lapse of five years and nine months from the

execution of the title bond to the tender of the purchase money. See *Eastman v. Palmer*, 46 N. H. 479; Fry, on Sp. Perf. 412 to 430; *O'Rourke v. Percival*, 2 Ball & B. 58; *Shuffleton v. Pitzer*, 1 Morris (Iowa) 427; *Brashier v. Gratz*, 6 Wheat. 528; *Pratt v. Carroll*, 8 Cranch. 471; *Watson v. Reid*, 1 Russ. & Mylne 236; *McNeil v. Magee*, 5 Mason 244; *Benedict v. Lynch*, 1 John. Ch. 370; *Haughwout v. Murphy*, 6 C. E. Green 118; *Southcomb v. The Bishop*, 6 Hare 213; *Eads v. Williams*, 4 De G. McN. & G. 691.

*b.* The fact that time was of the essence of this contract. In 1860 General Smith was endeavoring to secure the location of the Pacific Railroad through the neighborhood where Sedalia now is; with this view he laid off a town and began to sell lots. He desired as many persons as possible to buy and improve the property, and wished all the purchasers to move to the place, improve the property bought and establish a business. He contracted to sell to Atkisson cheap, as he was a good and energetic business man, and a part of the consideration was that Atkisson should move to Sedalia and start business. The benefits to have been derived by General Smith in this way were never realized. By a performance of the contract now Smith could not receive all the benefits contemplated at the time the contract was by its terms to have been performed. The parties cannot be placed in *statu quo.* The property at the date when the purchase money was due, was worth less than when the contract was made, and was fluctuating in value. See *Hipwell v. Knight*, 1 Yo. & Col, 415; *Alloway v. Braine*, 26 Beav. 757; *McBride v. Weeks.* 22 Beav. 539; *Doar v. Gibbs*, 1 Bailey's So. Car. Eq. 371; *Seaton v. Mapp*, 2 Collier 556; *Holt v. Thomas*, 8 Peters 420; *Crofton v. Ormsley*, 2 Scho. & Lef. 604; *Wright v. Howard*, 1 Sim. & S. 190; *Parker v. Frith*, 1 Sim. & S. 199.

Secondly. The great rise in the value of the property. See *De Cordova v. Smith*, 9 Tex. 129; *Alley v. Deschamps*, 13 Ves. 224; *Smith v. Lawrence*, 15 Mich. 499; Sugden on Vendors, 1 Vol., p. 413 or 300.

Thirdly. Abandonment of the contract. See *Baldwin v. Salter*, 8 Paige 473; 1 John. Ch. 429; 1 Oregon 355; 19 Ills. 519; *Feay v. De Camp*, 15 Serg. & R. 227; *Bannister v. Read*, 6 Ills. 92; *Cromwell v. Wilkinson*, 18 Ind. 370; *Fletcher v. Cole*, 23 Vt. 114; 2 Cal. 584; 9 Ala. 869.

*b.* The assignment of the bond did not give Melton a right of action against defendant. *Marshall v. Means*, 12 Ga. 66; *Prosser v. Edwards*, 1 Younge and Coll. 481; Sto. Eq. Jur. § 1040, *h.* Redfield's Ed.; *Iglehart v. Armiger*, 1 Bland, Ch. (Md.) 523.

4. The recission of contract. See *Kerr v. Bell*, 44 Mo. 120.

5. The general principles of equity in regard to specific performance, and herein of the growth of Sedalia and its uncertain condition when Atkisson left. *Stoutenburgh v. Tompkins*, 1 Stockt. 337.

6. There is no estoppel against the defendant. *Pickard v. Sears*, 6 Ad. and E. 469; *Stephens v. Baird*, 9 Cowen 274; *Welland Canal Co. v. Hathaway*, 8 Wend. 480; *Taylor v. Zepp*, 14 Mo. 482; *Terrill v. Boulware*, 24 Mo. 254; 3 Washb. on Real P. p. 70, 72; 31 Penn. St. R. 331.

*Philips & Vest* for respondent.

I. Time is not of the essence of this contract. 33 Maine 534; 2 Story's Eq. 776, note 1; *Taylor v. Longworth*, 14 Pet. 173.

II. The making of the title bond, and taking the note, constituted an equitable mortgage. 2 Story's Eq. 789; *Smith v. Robinson*, 13 Ark.; *Adams v. Cowherd*, 30 Mo. 458; *Amory v. Reilly*, 9 Ind. 490; 14 Cal. 73; 15 Cal. 194; 5 S. & M. 730; 57 Ala. 318; 18 Ala. 37.

(*a*) The retention of the title bond by Atkisson and the note by Smith, are facts totally inconsistent with the idea that either of them considered or understood the trade to be as cancelled or abandoned. *Blodget v. Greene*, 27 Mo. 524; *Gibbs v. Champion*, 3 O. R. 335; 3 Hume 335.

III. The vendor's contract was a joint one, and required a joint deed by, or separate deeds from Bouldin and Smith. The absence of Bouldin within the Confederate lines, from July, 1861, to the restoration of commercial relations between Missouri and Texas in 1865–6, destroyed the vendors' ability to specifically comply with their contract during that period. The depositions of Atkisson and Bouldin show what transpired between them during the war, evidencing the willingness of the former and the inability of the latter to comply with the contract. 2 Story, Eq. s. 778. *Dulby v. Pullim,* 3 Sim. 29; 1 Hill. Vend., 54; 20 Ala. 435; *Calmis v. Buck,* 4 Bibb 353–4; *Griswold v. Waddington,* 16 J. R. 478; *Life Ins. Co. v. Hall,* 7 Am. Law Reg. 610.

IV. Smith could not, without some positive act manifested to his vendee, much less, as he assumes in his testimony, by mere mental resolution, uncommunicated, rescind this contract of sale. *Henry v. Graddy,* 5 B. Mon. 452; *Walters v. Miller,* 10 Iowa 429. This was a joint contract of Smith and Bouldin. How could Smith, of his own motion, rescind it?

V. There was no abandonment of the property in question by Atkisson. 3 Wash. Re. Prop. 60, 61, 66; *Landers v. Perkins,* 12 Mo. 256; *Fine v. St. Louis Public Schools,* 30 Mo. 175; *Clark v. Hammerle,* 36 Mo. 639; *Ferris v. Corru,* 10 Cal. 631; *Warring v. Crow,* 11 Cal. 365, 366; *Richardson v. McNulty,* 24 Cal. 344.

VI. Smith is manifestly estopped as against Melton from claiming that Atkisson had no interest in this property when Melton bought. Melton's uncontradicted testimony shows he made his purchase upon the faith of Smith's conduct in trying to sell Atkisson's interest, and to buy claims against him, and Smith's assertions to him. *Langsdorf v. Field,* 36 Mo. 440; *Chouteau v. Goddin,* 39 Mo. 229; *Rice v. Bunce,* 49 Mo. 231.

VII. Smith had ample remedy in law and equity for his protection. The courts were open to him. He could

have proceeded by attachment against Atkisson, and seized the $500 of furniture and $3,000 of lumber; or he could have proceeded *in rem* against the property and its improvements, by foreclosure of the equity of redemption.

VIII. Appellant's counsel argue that Atkisson's cause of action could not be assigned to Melton. If it is meant by this, to assert that the old doctrines of champerty and maintenance are applicable to this case, we only refer to Sec. 2, Chap. 110, 2d Wag. Stat. · Outside of our statute, we understand the rule to be, that all causes of action which survive to the personal representative, in case of death, are assignable, and that in such case the assignee will possess all the equities of the assignor. 12 Mo. 51; 12 Kernan 622; 4 Denio 80; 13 Kernan 333; 15 Mo. 619; 2 Story's Eq. Sec. 1,044; Adams' Eq. 192; Story on Contracts, 447; 21 Mo. 135.

SHERWOOD, C. J.—Melton, as the assignee of James Atkisson, brings this suit for specific performance of a contract respecting certain real estate in the city of Sedalia. Suit brought in August, 1866.

Smith and Bouldin, in 1860, owned the town site of Sedalia, then recently laid out; the former an undivided three-fourths, and the latter an undivided one-fourth interest. The contract made the basis of this proceeding, was entered into November 18, 1860, and shows that Atkisson and McKernan purchased of Smith and Bouldin certain lots, at the price of $600, payable in six months, and for which the note of the purchasers was given. Atkisson and McKernan, immediately on their purchase, proceeded to erect on one of the lots so purchased, (lot 2,) being the lot in controversy, a warehouse, worth some $1,800, and did business therein until, as hereinafter stated. In May, 1861, Atkisson purchased McKernan's interest in the lots, on which, preparatory to the erection of other buildings, large quantities of lumber had been delivered, aggregating in value, together with the improvements

made, some $3,000.   The sale by McKernan to Atkisson embraced not only his interest in the lots and all improvements, but also in the lumber, as well as in a small stock of furniture, which they had on hand at the time of the sale being effected.   Owing to the disturbed condition of the country, which soon thereafter manifested itself, Atkisson did not long remain in business in Sedalia, nor complete the other improvements contemplated; but about June of the last mentioned year, left the place temporarily, leaving a friend in charge of his property during his absence, which absence, owing to the troubled state of the country and to threats of assassination, freely made against him, became a permanent one, and he, in a few months thereafter, left his home in Warsaw and removed with his family to the State of Arkansas, and eventually to the State of Texas, where he now resides.   He assigned and transferred his interest in the lots to the plaintiff in June, 1866.   Bouldin, who went South also, about the same time, or a few months in advance of Atkisson, and did not return to Sedalia until a little while before the institution of this suit, on his return conveyed to plaintiff his undivided one-fourth interest in the lots.   Smith, however, refused to convey in accordance with the title bond, although tendered the purchase money and interest.   The court found and decreed for plaintiff; hence this appeal.

I.   We entertain no doubt whatever as to the equitable interest of Atkisson being transferable.   Our statute (2 W. S., p. 999, § 2,) puts this matter at rest.

1. TITLE BOND: assignment.

So do repeated decisions of this court. (*Smith v. Kennett*, 18 Mo. 154, and Cas. Cit.; *Lumley v. Robinson*, 26 Mo. 364; *Adams v. Cowherd*, 30 Mo. 458; *Morgan v. Bouse*, 53 Mo. 219; *Street v. Goss*, 62 Mo. 229.)   Atkisson became, by his purchase, the equitable owner of the land; competent to devise or transfer it as such owner; and this independent of the statute referred to. (1 Sto. Eq. Jur., §§ 788, 790.)

II.   Relative to the alleged laches on the part of At-

Melton v. Smith.

kisson, or his abandonment of the rights acquired by rea-
son of his purchase, we have, after a careful
review and consideration of the whole testi-
mony, been able to find nothing which gives
support to such allegations. In *Douthitt v. Stinson*, (63 Mo.
268,) an action of ejectment, it was held that the period of
absence in the Confederate States, of one possessed of the
legal title to land, during the war, between April, 1861,
and the close of the war in 1865, was to be deducted in
estimating the length of adverse possession of a party, set-
ting up the statute of limitations against the owner. And
this ruling, Mr. Justice NAPTON speaking for the court, was
based on the fact that the owner was precluded from
asserting his rights in the *forum* where the defendant re-
sided. Will equity announce a harsher rule in similar
instances, than a court of law? Atkisson, driven from his
home by threats of violence, and the dangerous condition
of the country, when such threats meant˙something, and
were but too often followed by speedy and bloody fulfill-
ment, was, to all intents and purposes, as effectually preclu-
ded from bringing suit or otherwise asserting his rights, as
though a resident of the Confederate States, at the incep-
tion of hostilities. Making the deduction mentioned, it
will be readily seen that there is small room left to sustain
the assertion that Atkisson was guilty of *laches*. For the
war was not officially proclaimed as ended until June 13,
1865; and this suit, as before seen, was brought in August,
1866. What *laches* is, is as a matter of course, largely de-
pendent on the facts and circumstances incident to each
individual case. We are of opinion that the court below
reached the correct conclusion in refusing to impute *laches*
to Atkisson, for his seeming delay was clearly and satis-
factorily explained by the equitable circumstances before
noted.

And as to his alleged abandonment of his contract of
purchase, as evidenced by conversations expressive of such

*2. LACHES: absence in Confederate States during the war.*

**3. SPECIFIC PER-FORMANCE: abandonment of contract: evidence.** intention, we attach but slight importance. We have heretofore given our views respecting evidence of mere verbal statements, (*Ringo v. Richardson*, 53 Mo. 385; *Kennedy v. Kennedy*, 57 Mo. 73; *Worley v. Dryden*, id. 226.) Evidence of this character is to be received with "*great caution*," (1 Gl'f. Ev., §§ 45, 97, 200,) although nothing but purity of purpose animates those who thus testify. It is true, in the cases just cited, the effort was made to establish, by parol, the existence of a resulting trust, while here, the endeavor is to destroy a trust already created. (Story Eq. Jur., § 790.) Surely the evidence should not be less cogent in the latter than in the former case. And aside from the insufficiency of the evidence respecting the alleged verbal statements of Atkisson, an intention at utter variance with such statements, is evinced by him in such a diversity of ways, by his acts; by his letters; by the large amount of valuable property, both real and personal, which he left behind when forced to flee the State; and by his endeavors to return thereto after having left, that the correctness of the conclusion reached on this point by the lower court, is not open longer to discussion or dispute.

III. In addition to the foregoing observations, it may be remarked that the very doctrine of specific performance **4. TIME OF THE ESSENCE OF A CONTRACT: waiver.** had its origin, for the most part, in the fact that parties frequently did not strictly, in point of time, comply with their contracts; and that courts of equity do not usually regard time as an essential ingredient therein, nor is time so treated, unless the parties have themselves done so, or it thus necessarily results from the nature and circumstances of the contract. (Sto. Eq. Jur., § 776.) And even where time is of the essence of the contract, it may be *waived*. (Ibid.) This we regard as having been done in the present instance. The waiver on the part of the defendant was made conspicuously manifest by his letter to Atkisson, of date Nov. 24, 1860, showing that he regarded the condition "*a mere form*," and that

he would send the deed long in advance of payment, and so soon as the necessary blanks were printed. This waiver of a strict compliance with the terms of the contract, is shown in a manner equally unmistakable, by defendant continuing to treat the property as that of his vendee, down to a very late period; having so late as 1864 caused it to be assessed as that of Atkisson, and subsequently, by various unsuccessful attempts, endeavoring, by roundabout methods, to divest Atkisson's title by means of purchasing claims and bringing suit thereon, and by purchasing at execution sale.

IV. It may well admit of doubt whether Smith is in a condition to insist that Atkisson has been in default; for as the title to the lots was in both Smith and Bouldin, and as the latter never returned from the South until just before suit brought, even if Atkisson could with safety have returned, it would not have been in Smith's power, upon tender of the purchase money, to have executed a deed. So that it would scarcely seem that Smith occupies such an attitude as would enable him to impute *laches* to Atkisson, because if the latter, not surrounded by adverse circumstances, had been prompt in tendering the purchase money, the vendor would have been in no plight to avail himself of such promptitude. And if Smith had brought suit for specific performance, he could not have achieved success, not being in a situation to have conveyed a complete title, the only one he could have compelled his vendee to accept. (Fry Spe. Perf., pp. 202, 329, 334 and cases cited.) Granting, then, for argument's sake, that Atkisson has been guilty of delay, unexplained by equitable circumstances, we hardly think Smith in a condition to profit thereby.

5. LACHES: Rescission.

V. Conceding that the pleadings are in such shape as to admit discussion as to the rescission of the contract, whose enforcement is here resisted, still the attitude of Smith cannot be any more favor-

6. RESCISSION OF CONTRACTS.

ably regarded; for the rule seems to be that the right to rescind must be exercised *promptly*, and upon the happening of the event which gives origin to the right, and not afterwards; and if this be not done, when default occurs, as *ex. gr.*, where payment of the purchase money is not made at the time appointed, the right to rescind must be then exercised, or will be *waived*. (Fry Spe. Perf. 409, § 703. *Henry v. Graddy, infra.*) Smith never called on Atkisson when the note fell due (June 18th, 1861,) still retains possession of the same, and in 1862, long after the note fell due, called on McKernan for payment thereof, thereby showing, if such acts have any relevancy or meaning, that he still regarded the contract a subsisting one. This line of conduct, considered in connection with and in reference to that already noted, certainly furnishes ample ground whereon to base a waiver.

But this is not all. Smith was in no condition to exercise the right of rescission, even had he elected promptly so to do, and, for the obvious reason aforesaid, that holding only an undivided three-fourths in the property contracted to be conveyed, it was out of his power to have restored Atkisson to his *statu quo*, an absolute condition precedent to the exercise of the right of rescission, whether exercised with or without the intervention of the courts. (*Lockwood v. Railroad Co.*, 65 Mo.) And, most certainly, Smith could not by some mere hidden mental process, unconnected with overt act or outward manifestation, rescind the contract in question. (*Henry v. Graddy*, 5 B. Mon. 452; *Walters v. Miller*, 10 Iowa 429.)

VI. Again, this reason also occurs, and it appears of itself decisive of the case at bar. Melton's purchase of

7. ESTOPPEL. of Atkisson's interest would seem to have been brought about by the representations of Smith to Allen and Melton in the fall of 1865, respecting Atkisson's interest in the property purchased, on the faith whereof, and also of Smith's acts aforesaid, plaintiff made his purchase as disclosed by the evidence. This assuredly estops Smith

to say aught to the contrary of his former statements and acts. (*Rice v. Bunce*, 49 Mo. 231, and cases cited.) Viewed in any light then, the judgment rendered, commends itself to our approval, and is accordingly affirmed. All concur, except NAPTON, J., not sitting, by reason of having been of counsel.

AFFIRMED.