Burgess, J.
This is an action for $6,000, alleged to have been the agreed price for a tract of land owned by plaintiff, and conveyed by him, at the request of defendants, to one Owens, in payment for a herd of horses purchased by defendants from Owens, and to foreclose a mortgage on said horses, executed by defendants to plaintiffs to secure the payment of the purchase price *213 for said land. The defendants are W. H. Eobinson, E. Siple, Gr. W. Siple and Walter D. Beanblossom.
The petition, leaving off the formal parts, is as follows: ‘ ‘Plaintiff states that on the — day of August, 1892, defendants were justly indebted to plaintiff in-the sum of $6,000, being the amount of purchase price of the northeast quarter of section 30 and the northwest quarter of section 29, in township 40, range number 4, in Jefferson county and state of Missouri, which said real estate was by the plaintiff conveyed to one Owens, of Lyon county, state of Kansas, at the instance and request of the defendants, and for their use and benefit; and said defendants then and there agreed to pay said sum of money on or before the first day of May, 1893, and secure the plaintiff by executing and delivering to plaintiff a chattel mortgage on certain standard bred horses, mares and colts, by them purchased from said Owens, and by them received from said Owens in exchange for said land; and that afterward, on the — day of August, 1892, the defendants, in pursuance of said agreement to secure said indebtedness, executed and delivered to plaintiff their certain contract, herewith filed, by which they acknowledged this indebtedness to plaintiff in said su.m of $6,000, and agreed to pay the same on or before May 1, 1893, by which they agreed that plaintiff should have a lien on all of the personal property, consisting of standard bred horses, mares and colts, so received by them from said Owens, to secure the payment of the said sum of $6,000, together with interest thereon, by which said writing a lien was created in favor of plaintiff on said stock o'f horses to secure said sum, which said stock of horses are now on the farm of E. Siple, in Yernon county, Missouri, and specifically described as follows, to wit: * * *
“Plaintiff alleges and charges that the said sum of $6,000 became due and payable, together with six per *214 cent interest thereon from the — day of August, 1892, on the first day of May, 1893. The defendants have each of them failed and refused* and still fail and refuse, to pay said sum of money or any part thereof, and the same, together with the interest thereon, remains due and unpaid.
“Wherefore plaintiff prays that plaintiff have and recover of and from the defendants the said sum of $6,000, together with six per cent interest from the — day of August, 1892; and that plaintiff’s said lien on above described personal property be enforced, and that the said judgment be decreed and declared by the court to be a lien on all of said property, and defendants’ equity of redemption in and to all said property be foreclosed, and that the same be ordered sold and the proceeds thereof be applied in satisfaction of plaintiff’s debt and the costs herein, and for all other and further relief, and for costs.”
To which petition defendants E. Siple, Gr. W. Siple and W. D. Beanblossom filed the following answer:
“Now comes E. Siple, Gr. W. Siple and Walter Beanblossom, defendants in the above cause, for their separate answer to plaintiff’s amended petition deny each and every allegation therein contained, except what is expressly hereinafter admitted.
“Said defendhnts admit the execution of the written contract referred to in plaintiff’s petition. They admit the delivery of the horses referred to on the E. Siple farm, and that they are now there.
“Defendants, further answering, state that the said written contract referred to in plaintiff’s petition was the only contract they entered into with the plaintiff, or that they ever agreed to. Defendants state that they ought not to be held to a performance of said contract, and for defense thereto allege :
“First — That they were induced to enter into said *215 contract by the fraudulent representations of the defendant W. H. Eobinson, hereinafter set forth, while acting as agent or pretended agent of the plaintiff.
“Said defendants allege that said contract was signed under the following state of facts: That on the twenty-second day of July, 1892, the defendant W. H. Eobinson represented to these defendants that the plaintiff in this case, W. M. Eobinson, the brother of the said W. H. Eobinson, was the owner of certain standard bred, and thoroughbred horses, which could be procured at a very low figure, and out of which much money could be made; that by said representations and others hereinafter mentioned he induced these defendants to enter into a contract of partnership, by which all of said defendants were to purchase said horses of the plaintiff for the sum of $6,000, and to keep them and breed them and raise fine horses for sale; the said W. H. Eobinson to have and own a one half interest in said firm and to be entitled to one half of the profits of the said business, and the other defendants to have each one sixth interest in the business; that said contract was entered into, and at the same time a written proposition, prepared by said W. H. Eobinson, for the purchase of said horses from the plaintiff, was also entered into; that said horses, in pursuance thereof, were shipped to the farm of the defendant E. Siple, in Yernon county, Missouri.
“The said defendants allege that the said W. H. Eobinson induced them to enter into both of said contracts of partnership and purchase by false and fraudulent representations, that is to say, that he represented that all of said horses were standard bred, standard producers and thoroughbreds; that fourteen of the mares purchased were with foal; that all of said horses were in good condition and healthy; that he would furnish properly authenticated certificates of pedigree *216 showing that said horses were all duly registered in the stock book; that all of said representations were false, and were known to be false when made, and were made to induce the defendants to enter into said contract; that defendants believed said representations, and relied upon them, and acted upon the faith of them; that in fact said horses are neither standard bred, or standard producers or thoroughbreds; that only three of said mares were in foal; that said horses were not healthy nor in good condition, but were suffering from the distemper; that certificates of pedigree have never been furnished, though the said A¥. H. Robinson had promised time and again to comply with his contract in this respect; that as soon as defendants discovered the full extent of the fraud that had been perpetrated upon them, as aforesaid, they immediately notified the plaintiff that they would not comply with their contract, and that they rescinded the same, and that they were holding said horses subject to plaintiff’s orders. Defendants state that they still stand ready to deliver said horses to the plaintiff or his order.
“ Defendants state that all of the above representations were made by the plaintiff through his agent A¥. H. Robinson; that during all the negotiations of the sale of said horses, A¥. H. Robinson claimed and represented to the defendants to be acting as the agent of his brother, A¥. M. Robinson, in making said sale to the defendants.
“ Wherefore the said defendantá pray to be discharged with their costs.”
Defendant AV. H. Robinson, in his separate answer, admitted the allegations in the petition, but denied all averments in the answer of his codefendants as to representations made by him to them as set forth in their answer, and with respect to his agency in the sale of the horses.
*217 Plaintiff made reply to the answer of G-. W. Siple, E. Siple and Beanhlossom, denying all allegations therein.
The case was tried.before a jury, who, at the close of all the evidence, were instructed by the court, over the objections and exceptions of the defendants last named, to return a verdict for plaintiff for the amount sued for, with six per cent interest. In obedience to said instruction, the jury returned a verdict in favor of plaintiff for the sum of $6,500. The defendants E. and G-. W. Siple, and Beanblossom then filed their motion for a new trial, which being overruled, they saved their exceptions and appealed to this court.
The facts are about as follows:
In the month of July, 1892, the defendants, desiring to go into the horse-breeding business, entered into an agreement in the nature of a partnership for that purpose, and, in pursuance thereof, purchased from one Owens, of the state of Kansas, what was represented by him to be a herd of tiventy-eight head of standard bred, standard producing and thoroughbred horses, and by an agreement with the defendants, and at their request, plaintiff executed a deed to a farm containing three hundred and eighteen and one half acres of land which he then owned in Jefferson county, Missouri, to said Owens, at the agreed price between plaintiff and defendants of $6,000, in payment for the stock.
The deed to the farm was delivered to Owens by defendants, and, upon its receipt, he, Owens, turned over the horses to them and they were received at the farm of E. and G-. W. Siple, in Vernon county, Missouri, on the thirteenth day of August, 1892. A short time after the horses-were received by defendants they executed and delivered to plaintiff the instrument of *218 writing described in, and made part of, the petition, which reads as follows:
“ W. M. Robinson. — We, this day, acknowledge ourselves indebted to you for the, sum of $6,000 for the list of horses hereto attached, that we have this day bought of you. It not being convenient to pay you the cash, we agree to pay you the $6,000 as follows: All money to be turned over to you from sales of each and every animal herein described and from sale of all colts raised from any and all of this stock. We will pay you sis per cent interest yearly on average amount due you; we will take good care of the stock, will have it insured and will employ a man who shall devote his entire time to the care and training of the stock and increase. W. H. Robinson to represent one half of the stock. Respectfully,
“W. H. Robinson,
“E. Siple,
“Walter D. Beanblossom,
“Gk W. Siple.”
. The Siples testified that the horses were purchased from plaintiff through their codefendant, W. H. Robinson, who was plaintiff’s agent and their partner and by whom the horses were all represented to be sound, fourteen of the mares in foal, a large number of them registered on the herd book, when within two or three days after1 they were received one was found to be entirely blind, two blind of an eye each, one curbed, and about all of them diseased; that upon investigation it was found that only four of them were registered, and in February, 1893, as soon as it could be determined only four of them were found to be in foal.
On March 3, 1892, plaintiff wrote E. Siple a letter in which he said: “Why, when you saw me Sunday you did not talk to me as you wrote in your letter. I sold those horses to you, Willie & Company.”
*219 On the tenth day of March, 1892, defendant E. Siple wrote to plaintiff as follows:
“Mr. W. M. Bobinson, Webb City, Mo., Esq.
“Sib: — Yonrs of the 3 at hand; the horses you sold us are not as represented. Nor furnished with pedigrees and certificate according to contract and agreement, and the horses are now held here subject to your order and will be sold for feed and care and damages if not moved soon.
“E. Siple.”
To this last letter plaintiff replied as follows: “Joplin, Mo., March 12,1893.

“Mr. E. Siple, Nevada, Mo.

“Deab Sib: — Your most remarkable letter of the 10th inst. at hand. What do you mean when you say that the horses sold you were not as represented? I never made you any representation of the kind, character or pedigree of a horse sold. In fact never knew or pretended to know anything of the horses, nor did I ever see them. I only traded for them with the understanding that you, Willie, and parties with him, would make me a good note for them, or secure me in some way for their payment. It is most remarkable that you should have found out so much in so short a time. Why was it that you did not talk to me like a man when you were here to day two weeks ago? You never said a word about being dissatisfied, or that the horses were not all that you expected of them. I will serve notice on you, Willie and company now, that I will expect that you live up to the letter of your contract with me. You may sell the horses or do whatever you please with them, but when they are sold I will expect my money, and you can govern yourself accordingly.
“Respt. Yours, etc.,
“W. M. Robinson.”
*220 On the eighth of April, 1893, defendants Gr. W. Siple and Beanblossom wrote to plaintiff that they would no longer stand by the contract for the horses ■he had sold them, as they were not as represented, nor furnished with pedigrees and certificate according to contract and agreement.
There were something over forty head of horses brought from Kansas at the time of the purchase, of which E. Siple testified he got twenty-eight head. He further testified that he did not know what became of the others; that W. H. Robinson had them taken away from time to time, two or three head at a time. Plaintiff never, in fact, owned the horses nor did he ever see them. There was no offer to reconvey or to have reconveyed to him the farm conveyed by him to Owens in payment for them.
Defendants7 first contention is that the petition declared upon a contract for the sale of land, while the written contract shows clearly a sale of horses, and that it did not tend to prove the allegations of the petition, but did tend to disprove them, hence error was committed in permitting the contract to be read in evidence.
It may be conceded that a party can not sue on one contract and recover on another. But that is not this case. This suit is for the purchase price of a tract of land. The petition alleges that the written contract referred to therein was given, as a mortgage on a herd of horses to secure the payment of the purchase money for said land.
There is much force, however, in the contention that the proffered evidence did not tend to, support the allegations in the petition, but rather to contradict them, in that, in it it is said. “W. M. Robinson: — We this day acknowledge ourselves indebted to you for the sumof $6,000 for the list of horses hereto attached, *221 that we have this day bought of you.” This statement as well as the correspondence between plaintiff and defendants, herein before set out and referred to, tended to show that the horses were in fact sold by plaintiff to defendants, and to sustain the allegations in the answer. Yet we find the defendants objecting to the contract being read in evidence. The objection should have been sustained, but it does not necessarily follow that the judgment should be reversed because of this ruling alone.
By section 2303, Revised Statutes, 1889, it is provided that: ‘ ‘The supreme court, or courts of appeals, shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action.”
When the theory of the defense was that the horses were sold by plaintiff to them through his agent W. H. Robinson; that they were induced to purchase them by reason of fraudulent representations made by him, said agent, and asking that the contract be rescinded upon that ground, it is impossible that defendants could have been prejudiced by the action of the court in permitting the contract to be read to the jury. It tended to show the very thing for which they were contending, that is, the sale of the horses by plaintiff to them.
The evidence, taken all in all, however, clearly showed that plaintiff never owned the horses or sold them to defendant, but it did show that they were purchased by them from Owens, and at their request plaintiff deeded to Owens a farm, of which he was at the time the owner, at an agreed price of $6,000, in payment for the horses, and upon the execution and delivery of the deed to Owens the horses were delivered by him to defendants. Defendants then took and re *222 tained possession of the horses as partnership property, and there was no pretense or claim that plaintiff sold them to defendants, until they became dissatisfied with their trade some time thereafter, and suddenly came to the conclusion that they had purchased them from plaintiff.
The judgment is for $6,500; no reference is made in it to said written contract, and it is difficult to see how defendants’ rights could have been prejudiced by permitting it to go to the jury. Not only this, but the written contract was clearly intended to secure the payment of the price agreed upon for the land, and was in law a mortgage.
While we are not disposed to take issue with counsel for defendants in their position, that a suit brought by a party upon a contract made for his benefit by one assuming to act as his agent is a ratification of the contract, is equal to a previous authorization, and that, in such eases, the principal seeking an enforcement of the contract is answerable for any fraud perpetrated in making it (Savings Association v. Morrison, 48 Mo. 273; Mechem on Agency, secs. 151, 178; Norton v. Bull, 43 Mo. 113; State ex rel. v. Harrington, 100 Mo. 170), no such state of facts exists in this case. As the plaintiff did not sell the horses to defendants, it logically follows that he could not have had an agent in connection with a transaction with which he was in nowise connected or concerned.
An insurmountable barrier to the defense, admitting every other allegation in their answer to be true, is the failure of defendants to return to plaintiff, and their inability to do so, the horses which they claim to have purchased from him. The rule is, that a party desiring to rescind a contract must tender back whatever of value he has received, and place the other contracting party in statu quo; otherwise the contract *223 will not be rescinded. This is in accord with the soundest rules of equity and justice, and is of universal application, unless the other party, by some act or omission of his, has rendered it impossible for the party desiring to rescind to return the property received by him. Masson v. Bovet, 1 Denio, 69; Hammond v. Pennock, 61 N. Y. 145.
In the case in hand, defendants Siple, Siple and Beanblossom, were unable to rescind and return the property without .the concurrence of their codefendant, W. H. Robinson, who not only refused to rescind the contract, but had taken and disposed of a number of the horses, so that it was impossible that plaintiff could have been placed in statu quo.
In Melton v. Smith, 65 Mo., 315, Sherwood J., in speaking for the court, said: “Smith was in no condition to exercise the right of rescission, even had he elected promptly so to do, and for the obvious reason aforesaid, that holding only an undivided three fourths in the property contracted to be conveyed, it was out of his power to have restored Atkinson to his statu quo, an absolute condition precedent to the exercise of the right of rescission, whether exercised with or without the intervention of the courts.” See, also, Estes v. Reynolds, 75 Mo. 563.
But it is argued by counsel for defendants, that plaintiff,’through the wrongful acts of W. H. Robinson, his agent, placed defendants in such a position that they could not rescind, or restore all of the property, and that, under such circumstances, the law did not require them to do that which plaintiff himself had rendered impossible. This position, if borne out by the evidence is perhaps true, but is untenable in this case, for the reason, as we have before said, W. H. Robinson was not the agent of the plaintiff, and even if, in any possible way, he could be considered as acting as the *224 agent of plaintiff in the sale of the horses, which wé do not admit, there was not one scintilla of evidence tending to show that any such agency existed after they were purchased.
' On the discovery of the fraud defendants had the right to stand by the contract and sue the party from whom the horses were purchased for damages for the fraud practiced upon them, or to rescind the contract. They chose the latter course, and, in order to avail themselves of this right, it was a prerequsite that they place the other party in statu quo. Mo rever they should have acted promptly upon the discovery of the fraud. Taylor v. Short, 107 Mo. 384; Key v. Jennings, 66 Mo. 370; Hart v. Handlin, 43 Mo. 175; Dougherty v. Stamps, 43 Mo. 243; Estes v. Reynolds, and Melton v. Smith, supra. This they did not do.
The judgment was clearly for the proper party, and should be affirmed. It is so ordered.
All of this division concur.