## W. T. CRAYCROFT, Respondent, v. W. G. WALKER & COMPANY, Appellants.

### Kansas City Court of Appeals, May 23, 1887.

26 469
57 404
26 469
63 266

26 469
100 ¹406

1. CONTRACT — AGREEMENT ON SEPARATE PAPERS, BUT REFERRING TO EACH OTHER—HOW CONSTRUED.—Where the *guaranty* of a vendor and the subjoined *agreements* of the vendee were printed or written on the same piece, or continuous pages, of paper, and the *instrument* throughout refers to the preceding guaranty, as if made, and as if part of the one instrument, and the subsequent stipulations would be meaningless and inoperative without such guaranty, although the guaranty is not separately signed by the vendor, but the instrument is signed by him at its *conclusion*—the two parts must be deemed as *one instrument*, and *construed* and applied together.

2. ——— COVENANTS—WHETHER MUTUAL, DEPENDENT, OR INDEPENDENT—RULE CONCERNING.—In determining whether covenants are mutual in such a sense that each is a condition precedent to the other, or whether they be dependent or independent, the question must generally be determined, in each particular case, by inferring, with as much certainty as possible, the meaning and purpose of the parties, from a full survey, the rational interpretation of the whole contract.

3. ——— PRECEDENT CONDITION—PROOF OF PERFORMANCE.—Where the action is to recover on a contract (as in this case), *by the terms of which* an essential *precedent* act was to be performed by the plaintiff, he cannot recover without proof of compliance on his part.

4. Practice—Instructions—Ignoring of Part of Terms of Contract in Issue.—Instructions upon a contract, which wholly ignored the *limitations* of the contract (as in this case), should not have been given in that form.

Appeal from Barton Circuit Court, Hon. Charles G. Burton, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is an action, begun by attachment, for a breach of warranty in the sale of a printing press, known as the "Prouty Power Press," sold by the defendants to the plaintiff. The alleged guaranty and contract of sale are as follows:

"Guaranty and contract for sale and purchase of a No.
"3 Prouty Power Press.

"Madison, Wis., 188  .

"W. G. Walker & Co. do hereby agree to furnish W. T. Craycroft a No. 3 Prouty Power Press, on, or before ...  ........, 188.., and we guarantee the same as follows: 'Said press shall, if set up by our agent, or rightly and perfectly set up by any other party, in the hands of a competent pressman, make a good, even impression, give a good table ink distribution ; work with a close margin, and register, and print anything from a full newspaper form down to small posters ; and will, if necessary, with proper care and good pressmanship, print letter heads and other small work, doing it in a first-class manner. We also guarantee the press to be thoroughly and mechanically built, and to be durable, and to run as easily as other printing presses having same size forms.' Said press to be furnished with rubber blanket, one set ink roller cores, and one set ink roller cast, and four wrenches, and with the following extras:  One job fountain.

"[Signed]                    ...................
"Lamar, Mo., August 27, 1883.

" On the above guaranty of Walker & Co., W. T. Craycroft, of Lamar, Missouri, does hereby order of Walker & Co. a No. 3 Prouty Power Press, the same to be shipped to Lamar, Missouri, at once. And I do hereby agree to pay to Walker & Co. for said press, the sum of six hundred and ninety dollars, as follows :

"$150.00 to be paid in cash ; $91.25 in a note, running four months with interest at ten (10) per cent., and $91.25 in a note, running seven months with interest at ten (10) per cent., and $91.25 in a note, running ten months with interest at ten per cent, and $91.25 in a note, running thirteen months with interest at ten per cent., and $175.00 in a hand press, described herewith, to be shipped to Walker & Co., Madison, Wis. These notes are payable at any time during the year, at option of purchaser. And I do hereby further agree to deposit said cash and said notes in E. Egger & Son's bank, at Lamar, Missouri, on, or before, shipment, 188... Said cash and notes shall be deposited subject to the order of Walker & Co., Madison, Wis., whenever they present to said bank the proper shipping receipt, showing press to have been delivered on board cars, as above directed.

" It is hereby further agreed by me that, within fifteen days after the receipt of the press (if said press is as guaranteed), I will, at my own expense, execute a first chattel mortgage on the above press, for $365.00, in favor of Walker & Co., to cover the above notes, and that I will have the same properly recorded, at my own expense, in the clerk's office, as demanded by law. And I will, also, insure the above press, in a good, reliable company, to the amount of the notes, and turn over said policy, as further security, to Walker & Co., or their order.

" I do further agree that, in case I am unable to make said press work satisfactorily, within fifteen days from its receipt by me, I will notify Walker & Co., and ask them to set up said press free of expense to me. We

do, also, agree to have in readiness proper forms for testing said press as soon as it is set up by the authorized agent of Walker & Co., and will pay said expenses to the agent setting up the press, if so directed by Walker & Co. And said Walker & Co. do hereby agree that, in case I fail to make the press work satisfactorily, as guaranteed, they will, within thirty days, put the press in good working order, as guaranteed (provided I have not broken, or injured, said press), or replace it with a new press that will work, or return the cash or notes paid over to them, and, also, refund the actual amount of cash paid out by me for freight.

"It is hereby expressly understood and agreed, by the purchaser, that the sole right and title to said Prouty Power Press shall be in Walker & Co. till all the requirements and agreements of their contract have been fully and faithfully executed by said purchaser.

"It is, also, further expressly understood and agreed that, after Walker & Co. have safely delivered said press on board the cars (at Madison, Wisconsin), carefully boxed, and correctly directed, they are fully released from all liability or responsibility for the breakage, while in transit or delivery.

"[Signed]        W. T. Craycroft, Purchaser.
             "R. M. E. Cooper, Agent.
             "Walker & Company.

"See contract. This contract not good or binding upon Walker & Co., unless countersigned in writing by them."

On the trial, before a jury, the plaintiff offered and read in evidence the foregoing paper, against the objection of the defendant. The ground of the objection was, that the guaranty, on the part of the defendant, was not signed.

The plaintiff's evidence tended to show that the machine was not in accordance with the representations contained in the guaranty; that it failed in many im-

portant particulars to do certain character of work speci-
fied. The evidence also showed that the plaintiff
received the machine, and used it for about six months
before he gave any notice, or made any complaint of its
failure to afford satisfaction. His explanation of this
delay was, that the machine did well enough on the kind
of work he used it on up to that time; but when, at the
end of that time, he undertook to do the work on it of
book printing, it failed to give satisfaction in this re-
spect. Notice was then given to the local agent at
Lamar, who attempted to make it work, but without
success. This agent testified that the employes in the
printing office had "doctored" the type, or something,
"in order to put up a job on him." This, however, was
denied by plaintiff's witnesses.

There was much evidence offered on both sides as
to the quality of the machine. But as the case is de-
termined on the construction of the contract, it is not
necessary to make further statement of the evidence.

The court gave, at plaintiff's instance, the follow-
ing instructions:

"1. The court instructs the jury that the contract
and guarantee, read in evidence, bound the defendants,
Walker & Company, to furnish to plaintiff such a press
as if set up by defendants' agent, or rightly and per-
fectly set up by a competent pressman, would make a
good, even impression, give a good table ink distribu-
tion, work with a close margin and register, and print
anything, from a full newspaper form down to small
posters, and would, if necessary, with proper care
and good pressmanship, print letter heads and other
small work, doing it in a first-class manner; and further
guaranteed said press to be thoroughly and mechani-
cally built, and to be durable, and to run as easily as
other printing presses having and printing same sized
forms. Now, you are further instructed that, if said
press was properly and perfectly set up and put in ope-
ration, and that it failed in any of the particulars men-

tioned in said guaranty, or in all said particulars, then you will find the issues for the plaintiff."

"2. If you find for the plaintiff, you will assess his damages at the sum of six hundred and ninety dollars, less such sum as you shall find, from the evidence, the press was actually worth for the purposes for which it was bought and is used, together with six per cent. interest per annum, upon the amount so found due, from December 31, 1884."

The jury returned a verdict for the plaintiff. Defendant has appealed.

TUCKER & COLE and THURMAN & WRAY, for the appellants.

I. The *so-called guaranty* should not have been admitted in evidence. There was *no allegation* in the petition that it was ever *executed*. There was *no evidence* that it had been executed, and the paper itself, on inspection, *showed that it had not been executed.*

II. When a witness is produced to testify as an expert, his *qualification*, as an expert, must be disclosed. *Stonam v. Waldo*, 17 Mo. 489; *Koons v. Railroad*, 65 Mo. 592; *Wayner v. Jacoby*, 26 Mo. 530; *Paige v. Parker*, 40 N. H. 47. And if his grounds of knowledge appear to be slight he will be rejected. *Nute v. Nute*, 41 N. H. 60.

III. *General reputation*, or the reputation of a person in a *particular locality*, is *not admissible* for the purpose of showing that he is a competent mechanic, and that he is capable of properly performing any work of art, science, or trade, and the testimony of Sutherland, as to Branden's reputation in that vicinity, as a competent pressman, should have been excluded. *Baldwin v. Railroad*, 4 Gray (Mass.) 333; *Ervingham v. Menon*, 2 Brev. (S. C.) 461; 1 Greenl. on Evid. [14 Ed.] sects. 98, 99, 124.

IV. The evidence offered by defendant, tending to show that at the time plaintiff purchased the press, *no*

*guaranty* was asked by plaintiff, none promised to him, and, therefore, none given, *was not objectionable* on the ground that it would *vary the terms of a written contract.* The appearance of the so-called guaranty, on inspection, would require and permit explanation, and *explanation is not contradiction;* and if the appearance of the paper is consistent with either of two states of fact, evidence explaining the appearance, or showing the intention, is admissible. *Kuntz v. Temple,* 48 Mo. 71; *Brown v. Bank,* 2 Mo. 191.

V. The *contract* required the plaintiff, within fifteen days after receipt of press, to *thoroughly test the same,* to give *notice to defendants* of any failure of the press to work satisfactorily. Plaintiff, *upon failing to give such notice* for five or six months, *could not recover upon the contract,* and all evidence about defendants' agent, Cooper, failing to make such press register after five or six months, was wholly immaterial, and Cooper's attempt to make it register was a gratuity, and did *not affect the liability* of either of the parties under the contract.

VI. If the suit had been upon the executed guaranty, it would have been necessary for plaintiff to show, in order to recover, that he *had performed* the contract on his part. *This he did not do.* The *conditions* of the contract were dependent, and are to be construed according to the *intention* of the parties. *Cress v. Blodgett,* 64 Mo. 452; *Nichols v. Larkin,* 79 Mo. 264; *Freeland v. Mitchell,* 8 Mo. 487.

VII. The first *instruction* is objectionable (1) Because it eliminates the question of *time,* and ignores *other conditions* of the contract. (2) The instruction assumes as a fact, a matter at issue, viz: that a guaranty had been executed. (3) The *one issue* in the case is, as to whether the defendant agreed to execute the warranty or guaranty. The instructions, on the plaintiff's part, *assumed* that such guaranty or warranty was executed. The court cannot, by instructions, change the issue.

*Bankston v. Ferris*, 26 Mo. 175; *Overton v. Webster*, 26 Mo. 332; *Brown v. Railroad*, 80 Mo. 457.

ROBINSON & HARKLESS, for the respondent.

I. The *first point*, made by the appellants, is as follows: · "The so-called guaranty should not have been admitted in evidence. There was no allegation in the petition that it was ever executed. There was no evidence that it had been executed, and the paper itself, on inspection, showed that it had not been executed." In answer, respondent says that the *language of the petition* upon this subject is, "entered into a contract, for the purchase of one of said presses, which said contract, signed by the parties hereto, is in words and figures as follows, to-wit:" and there follows a copy of the guaranty and contract *in haec verba*. This is *a sufficient allegation*, and the court found, on inspection of the paper, that it was all one contract, and that the signatures at the bottom, applied to the whole paper. This court will not, *in the absence of the paper*, review the decision of the trial court, and besides this, the reading of the copy in defendants' brief, shows that the guaranty and contract were *filled out* with Craycroft's name in the first and second line of the guaranty as printed. And, again, Craycroft agrees to make notes, etc., "if said press is as guaranteed." And, again, "in case I fail to make the press work satisfactorily as guaranteed, * * * put the press in good working order," as guaranteed, all these expressions referring to the guaranty, show that it was adopted as a part of the contract, and hence the ruling of the court, "that the signing at the bottom referred to the whole paper, guaranty and all," was correct.

II. In this case the *only testimony* which could in any way be called *expert*, is as to how the press works, and Sutherland is shown to have *been* a printer and pressman of several years' experience, and to have been familiar with this press, and, at times, had been foreman

in Craycroft's office. According to this case, he could certainly *express his opinion* as to whether the press did good work or not. This was a matter of *common observation*, to be judged of by any person who was familiar with the printer's art. That part of Sutherland's evidence which pertains to the mechanical construction of the press, which might have required him to have had some experience as a machinist, was stricken out on motion of defendants. The other Missouri cases are just to the effect that persons who are not experts, shall not give expert testimony.

III. The case of *Kuntz v. Temple* is to the effect that evidence may be given to *show the contract* which a party intended to assume, by writing his name on the back of the note, *when such intent is not expressed.* In *Brown v. Bank of Missouri*, the court held that a letter, which was *claimed to be a part of the contract,* might be shown by evidence *aliunde* to pertain to another subject, and had no reference to the contract under consideration. *Neither of these cases has any application in the case at bar.* Here it is sought, by *oral evidence*, to be shown that a certain material part of a written contract ought to be stricken out, and that, too, when the part sought to be stricken out is *referred to,* and by *definite words made a part of the contract.* It is of no importance whether the guaranty is signed or not. If it had been written on the back of the paper, or on another piece of paper, and not signed, yet, if it could be shown *that it was the guaranty referred to in the contract,* it would be a *part of the contract,* as much so as though written in it, and the only question that could be raised is, whether that is the guaranty referred to. When the contents of a contract have been ascertained, *the intention of the parties must be gathered from the contract itself,* unless there is a latent ambiguity, which is not claimed in this case. Counsel say that they want to explain, not contradict; but the contract which they did sign, plainly says that

the guaranty which they say they did not sign, is to be read as a part of the contract. The object of the evidence here offered, is to *flatly contradict the contract*, and show that the guaranty—which, they admit, is the one referred to—should not be read with the contract. This is so clearly not permissible, that authorities need not be referred to.

IV. The *language of the contract*, upon this point of *notice* is as follows: "I do further agree, that in case I am unable to make said press work satisfactorily within fifteen days of its receipt by me, I will notify Walker & Company, and ask them to set up said press free of expense to me. We do also agree to have in readiness proper forms for testing said press as soon as it is set up by the authorized agent of Walker & Company, and will pay said expenses to the agent setting up the press, if so directed by Walker & Company." *This is not, in any sense, a condition precedent.* The liability of defendant for damages for a breach of his guaranty, is not, by the contract, made to depend on the plaintiff's giving this notice. There is no agreement that notice *may not be given later*. There is only an agreement that if they fail to make the press run satisfactorily within fifteen days, he will give the notice. If the proof had shown that the defects, here shown in evidence, were known to respondent within fifteen days, and that appellants had been damaged by notice not having been given, etc., then appellants might have *recouped* such damages, but it could have no other effect. These facts, *when taken together*, show that all that the plaintiff was required to do, *even if the giving of notice* is a *condition precedent* to a recovery, was proven to have been done by plaintiff, *except it was not done within fifteen days*. *Time was not made of the essence of this contract*, by express agreement, and the intention of the parties, gathered from the language used, *shows it was not intended*. The fifteen days' time fixed, is the time limited before the plaintiff had a

right to call on defendants to fix the machine, without expense to plaintiff, *and the giving of notice at all* is on the theory that *the press is in fact as guaranteed*, and only requires to be properly set up and managed, to make it fill the requirements of the guaranty.

V.   But this case goes on *entirely another proposition*, to-wit: That the press is *radically wrong in principle*, and so poorly constructed that it *cannot be made to fill the guaranty*, and that all presses of the same kind are inferior in construction and kind, so that, with any amount of repairs and setting up, or furnishing new presses, the guaranty cannot be satisfied.   The agreement to give notice does not proceed on this theory, but on the theory that the press, when properly set up and managed, is what the guaranty calls for.   In such a case the plaintiff has agreed to give notice, and let the defendant come and adjust the press.   *But even then this agreement is not a condition precedent.*   Bishop, in his new work on Contracts, says that "a condition precedent is where a stipulation is to bind a party only on the transpiring of a designated event."   Bishop on Cont., sect. 586.   Will it be said that if this press had been so built as to do good work, in every respect, for fifteen days, and then, on the sixteenth day, like the one-horse shay, drop into pieces, from mere instability of construction, that no recovery could be had?   The reading of the contract shows that *this was not intended as a condition precedent*.   But, even if it is to be considered as a condition precedent, still the evidence shows that the plaintiff gave the notice *within a reasonable time*, and that the giving of the notice on the part of the plaintiff, as alleged, was not controverted by the defendants, and hence was not an issue to be tried by the jury.   The court, in its instruction, *had a right to assume that the notice had been given*, so long as it had been clearly proved by the plaintiff, and not controverted by the defendants.

VI.   In further objecting to instruction number one,

the appellant claims that *whether guaranty was executed or not*, was the matter in issue, and hence should not have been ignored by the instruction. In this he is in error, as the court, at the trial, *had excluded all evidence of this character*.

PHILIPS, P. J.—I. The first question for determination on this record is, was the guaranty on the part of the defendants properly admitted in evidence? It is true that this paper does not appear to be signed at the bottom of the vendors' guaranty, as it should have been signed if it were a separate paper or instrument. But we take it, from the abstract of the record furnished by the appellants, that this guaranty, and the subjoined stipulation, or agreements, on the part of the vendee, were printed or written on the same piece, or continuous pages, of paper. The contrary fact not appearing in evidence, the presumption is to be indulged in favor of the ruling of the trial court, that they were so connected. *Holten v. Kemp*, 81 Mo. 665. Although the vendor's guaranty is not separately signed by him, he did sign the instrument at its conclusion, which, throughout, refers to the preceding guaranty, as if made by the defendants, and as if a part of the one so signed. Without such guaranty being obligatory on the defendants' part, the subsequent stipulations would be meaningless and inoperative, at least in some important particulars.

After the defendants have thus recognized it, the two parts must be deemed as one instrument, and construed and applied together. *Railroad v. Atkinson*, 17 Mo. App. 498; *Railroad v. Levy*, 17 Mo. App. 501, and cases cited.

II. The important question then arises as to the proper construction to be placed upon these agreements or covenants. The contention of defendants is, that they are mutual and dependent; that, while the vendor undertook to sell the vendee a press of the character specified

in the guaranty, yet the vendee's right to proceed as for a breach of the guarantors' warranty, is, by another part of the instrument, made to depend upon the vendee's having, as a precedent act, done a certain other act on his part, one of which is that he had fifteen days within which, after the delivery of the machine to him, to make a test of its fitness by his own competent workmen or servants, and if it failed to give satisfaction, he was, within the fifteen days, to notify the vendors thereof, and allow them the opportunity to set it up with their more experienced servants.

There is much discussion in the text books and adjudications, touching the question of the dependence of mutual covenants, or undertakings, between vendor and vendee. But, as said by Napton, J., in *Freeland v. Mitchell* (8 Mo. 489): "The only principle to be extracted from the numerous cases in relation to the dependence or independence of covenants is, that they are to be construed according to the intention and meaning of the parties, and the good sense of the case."

So in *Wellman, Adm'r, v. Dismukes* (42 Mo. 105), Wagner, J., observed: "In the application of this rule, a difficulty sometimes arises in determining whether covenants are mutual in such a sense that each is a condition precedent to the other, or whether they be dependent or independent. This question must generally be determined, in each particular case, by inferring, with as much certainty as possible, the meaning and purpose of the parties; from a full survey, the rational interpretation of the whole contract."

In looking at the whole and every part of the undertaking, on the part of the vendee, it is apparent that the matter of time was deemed important, and that certain acts were to be performed, within a given time, by the vendee, and this for a most obvious reason, to my mind.

It was not, as between the parties, an unconditional

sale. The title was to remain in the vendors until the vendee performed certain acts on his part. The vendee was to make a certain cash payment ; he was to execute and deposit notes in a certain bank, for the unpaid purchase money, and, also, to execute and put to record a chattel mortgage, to secure the unpaid purchase money, and, also, to take out a policy of insurance on the property, for the benefit of the vendors. The stipulation was that this should be done within fifteen days. The object of the fifteen days' limitation becomes quite obvious when we take into consideration another part of the contract, whereby the vendee is to have fifteen days within which to make a test of the press, to see if it works satisfactorily, or conformably to the representations. The presumption would be, that if, at the end of that time, the vendee executed and delivered the notes, as, also, the mortgage, he was satisfied with his purchase, and had finally accepted the machine. Then follows this provision : "I do further agree, that, in case I am unable to make said press work satisfactorily, within fifteen days from its receipt, I will notify Walker & Company, and ask them to set up said press, free of expense to me."

What is the meaning, or clear implication, of this provision, when read in connection with the others ? Simply that the vendee was to be allowed fifteen days, after the receipt of the press, to make the test to his satisfaction. If, however, it failed, on his experimenting with it, he could not yet go upon the vendors as for a breach of the guaranty, but must then notify the vendor of the failure, and ask them to set it up. The object of the stipulation was to afford the vendors an opportunity, with their own more experienced employes in operating this machinery, to set it up properly, and rectify any defects in its running and work. And yet another right was secured, after this, to the vendors, to replace the press with another, within thirty days after the expiration of the fifteen.

As was said in *Nichol, Shepherd & Co. v. Larkin* (79 Mo. 270), on a like question, where the contract called for notice to be given the vendor, or manufacturer of the machine : "The reason for this was obvious enough, if it were necessary to give one, to sustain a positive undertaking. It was possibly to guard and protect themselves against the indifference, the neglect, and lack of skill on the part of local agents, necessary to the rectifying of defects in the working of the machine. By imposing the duty on the purchaser, the party complaining, to notify the manufacturer, it insured a greater certainty in his getting the notice, thereby enabling the manufacturer to look to his work and protect the reputation of his machinery."

While it is not necessary, in this case, to hold that the notice should have been served directly on the vendors, the reason of the fifteen days' limitation is plain. After a machine like this is run for a period of six months, with different, and, perhaps, indifferent, operators, it would be unfair to the vendors to submit to a test. They desired to do this while the machine would, presumably, be nearly in the condition as when it left the factory. If the vendee had such confidence in his own employes as to be content with their experiment, to close up the contract by giving the notes and mortgage, and continuing to operate and hold it for a longer period, without one word of complaint, his acceptance was to be deemed complete. It was contemplated that he would make a practical experiment with the press, in every branch in which he expected to employ it, within the fifteen days, and not to go on with it for months or years, as if satisfied with it, and then put it to some other test. Under such a construction, the vendee could have run this machine in his printing office for nearly five years before attempting to do book printing on it, and then sue for a breach of the warranty, on the ground that it failed in this work. Such was not the purport of the contract. The action being to recover on

a contract, by the terms of which an essential precedent act was to be performed by the plaintiff, he cannot recover without proof of compliance on his part. *Nichol, Shepherd & Co. v. Larkin, supra.*

There are other errors in this record, but as the objection above stated is decisive of the case, as here presented, it is not important to review them. The instructions given by the court, for the plaintiff, wholly ignored the limitations of the contract, and should not, therefore, have been given in that form. *Hoffman v. Parry,* 23 Mo. App. 30.

The judgment of the circuit court is reversed, and the cause remanded for further proceeding, in conformity with this opinion. All concur.