CHAS. R. KIRK & COMPANY, Appellants, v. EZRA D. SEELEY, Respondent.

Kansas City Court of Appeals, November 4, 1895.

1. **Warranty**: MODE OF RESCISSION:NOTICE. In the case of a warranty connected with an agreement as to the action of the parties in the event of a failure of the warranty, the agreement should govern; and where, on the failure of a warranty in the sale of a horse, it is agreed that the vendor may replace the animal with another, it is incumbent on the vendee to notify the vendor and demand another animal.

2. **Rescission**: PROMPT ELECTION. In order to rescind a contract on account of deception practiced upon the vendee, he should act promptly on discovering the fraud and put the other party in the same situation as before the contract was made. In this case there was no such prompt election as the law requires.

*Appeal from the Grundy Circuit Court.*—HON. PARIS C. STEPP, Judge.

REVERSED AND REMANDED.

*H. G. Orton* and *T. M. Stuart* for appellant.

If the property is of any value whatever, and not entirely worthless, it must be returned by the buyer before he can rescind. 8 Am. Cyclopedia, p. 817, sec. 9; Benj. on Sales [Corbin's Ed.], p. 592, sec. 674; *Perly v. Balch*, 23 Pick. 283; *Getchell v. Chase*, 37 N. H. 316; *Dows v. Griswold*, 4 Hun (N. Y.), 550; *Rose v. Hooly*, 39 Ind. 77; *Smith v. Bitterham*, 98 Ill. 188; *Merritt v. Robinson*, 31 Ark. 381; *Fitz v. Bynum*, 55 Cal. 459. (2) A contract of sale induced by fraud is merely voidable and not void; so that if, after discovery of fraud, the buyer indicates his acquiescence in the

sale by any unequivocal act, such as treating the property as his own, his option will be determined, and he can not afterward reject the property. 8 Am. Cyclopedia, p. 819, sec. 10; *Evans v. Montgomery*, 50 Iowa, 425. Mere delay may also have the same effect. 8 Am. Cyclopedia, p. 819, sec. 10; *Collins v. Townsend*, 58 Col. 608; *Hall v. Fullerton*, 60 Ill. 448; *Rawson v. Harger*, 48 Iowa, 269. An offer to rescind is not a rescission. There must be a tender of the property. *Cohn v. Reid*, 18 Mo. 124, 125, 126; *Armstrong v. Tobacco Co.*, 41 Mo. App. 259; *Peers v. Davis*, 29 Mo. 184. (3) A party is not entitled to the rescission of a contract as induced through material misrepresentations where, owing to his failure to act promptly on learning of the misrepresentations, there has been such a change of circumstances that he can not place the contracting party *in statu quo*. *Brockhaus v. Schilling*, 52 Mo. App. 73; *Quinn v. Stout*, 31 Mo. 160; *McQuaid v. Ross*, 46 N. W. Rep. (Wis.) 892; 77 Wis. 470; *King v. Tousley*, 64 Iowa, 75; *Love v. Ross*, 56 N. W. Rep. 528.

*Harber & Knight, H. J. Alley*, and *Ira B. Hyde* for respondents.

(1) Where conformity to warranty can only be determined by use, the vendee may, in a majority of the American states, rescind, even after acceptance. Tiedeman on Sales [1 Ed.], sec. 197, p. 296; *Implement Co. v. Leonard*, 40 Mo. App. 477. (2) Acts of confirmation of a contract by a defrauded party will not bind him "unless he was fully apprised of the fraud and his rights." *Shackelford v. Handley*, 1 A. K. Marsh. 495; *Johnson v. Johnson*, 5 Ala. 90; *Crowe v. Ballard*, 1 Ves. 215; Cooley on Torts [1 Ed.], p. 503, note 2. "Defrauded party may rescind though he af-

firmed after the fraud was disclosed to him in part,
if afterward he discovered the falsity of other material
representations. *Pierce v. Wilson*, 34 Ala. 596;
Cooley on Torts [1 Ed.], p. 503, note 2. No
delay will defeat rescission if ignorant of fraud. 2
Pomeroy's Eq. Juris. [2 Ed.], sec. 917. Same
volume, sec. 965; *Bowman v. Patrick*, 36 Fed. Rep.
138; 12 Am. and Eng. Encyclopedia, p. 548, note. (3)
Whether respondent acted with reasonable promptness
in rescinding a contract induced by fraud is a mixed
question of law and fact and may be submitted to the
jury. In the case at bar, it was submitted to the jury
on proper instructions. 3 Am. and Eng. Encyclope-
dia, p. 932, note 2, and cases cited. *Kingsley v. Wallis*,
14 Me. 57; *Holbrook v. Burt*, 22 Pick. 546: *Hedges v.
Railroad*, 49 N. Y. 223; *Morgan v. McKee*, 77 Pa. St.
228; *Rothchild v. Rowe*, 44 Vt. 389.

ELLISON, J.—This is an action of replevin whereby
it is sought to recover the possession of two stallions,
Ajax and Jumbo, plaintiffs' claim of title being based
on a chattel mortgage given to them by defendant.
The trial below resulted in defendant's favor for Jumbo,
he making no contention as to Ajax and so stating in
his answer.

On January 21, 1891, plaintiffs sold and delivered
to defendant the stallion, Ajax, and gave the following
written warranty of his being a breeder:

"CHARITON, IOWA, January 21, 1891.

"This is to certify that "Ajax," the French Coach
horse whose number is 744, and is this day sold to E.
D. Seeley, is sound and warranted to be a breeder, and
in case of his being barren we hereby agree to replace
him with another French Coach horse of equal value
and fully guaranteed." The price to be paid was
$1,500, which sum was evidenced by defendant's three

promissory notes of $500 each and secured by the chattel mortgage above mentioned, covering not only the stallion sold, but also Jumbo, a stallion then owned by defendant.

The defense offered against the right of plaintiffs to recover Jumbo was that plaintiffs fraudulently and falsely represented Ajax to be a "sure breeder and a sure foal getter," and that "he had gotten five mares with foal at Chariton, Iowa, being all the mares he had covered;" whereas he was worthless for breeding purposes.

There were a great many instructions offered by plaintiff, many being given and several refused. It is difficult to understand how the jury could have found a verdict for the defendant, or how the trial court permitted it to stand after being rendered, under the instructions which were given for plaintiff. Many of these required a verdict for plaintiff, if the jury believed certain facts, relating to rescission and a demand for another stallion, which stood practically confessed by the defendant in his own testimony. It would have been entirely proper to have directed a verdict for plaintiffs, if they had asked it. By the terms of the written warranty, Ajax was warranted to be "a breeder," by which was meant that he was a good breeder, as it is ordinarily understood stallions kept for breeding purposes should be. And that if he was "barren"—that is to say, not a good breeder,—the plaintiffs were to replace him with another stallion of value equal to Ajax, had he been a good breeder. These are not the words of the contract expressed in the warranty, but are evidently what was intended. It is well settled law that in case of warranty connected with an agreement as to the action of the parties in case there is a failure of the warranty, the agreement will govern the consequences which may arise from a breach of the warranty.

*Nichols, Shepard & Co. v. Larkin*, 79 Mo. 264; *Deere, etc., v. Fucht*, 27 Mo. App. 4; *Craycroft v. Walker*, 26 Mo. App. 469.

The written contract here contemplates that if there is a failure of the warranty, plaintiffs may replace the animal sold with one of like value. It was, therefore, incumbent upon defendant, when he became aware of the breach of the warranty, to have notified plaintiffs and demanded another stallion of like value, under the terms of the contract. He did not do this, but, on the contrary, his entire evidence shows that he made no effort to surrender Ajax, and he expressly states that he never demanded another horse in place of Ajax.

2. A branch of the law has been invoked by the parties which relates to the rescission of contracts by the complaining party when he discovers the fraud practiced upon him. The rule is that, to rescind a contract for fraud, the party victimized must assert his election to rescind promptly. *Cahn v. Reid*, 18 Mo. App. 124, 125; *Melton v. Smith*, 65 Mo. 315; *Taylor v. Short*, 107 Mo. 384; *Estes v. Reynolds*, 75 Mo. 563. We quote from the latter case what we deem somewhat applicable to the evidence developed in this case:

"A party can not affirm a contract in part and repudiate it in part. He can not accept its benefits on the one hand, while he shirks its disadvantages on the other. He can not play fast and loose in the matter. Nor is he permitted to select his own time, consult his own convenience, and watch the rise and fall of the market, before exercising the right of rescission. If he elects to disaffirm the contract in consequence of deception practiced upon him, such election in order to avail him must have the chief and essential element of promptitude, and he must put the other party in the same situation as he was before the contract was made."

So, if the delay is palpably unreasonable, the court will, as a matter of law, declare it to be too late. *Viertel v. Smith*, 55 Mo. App. 613; *Steam Heat Co. v. Gas Co.*, 60 Mo. App. 148.

The testimony of the defendant himself shows that he purchased the horse in January, 1891, and used him the succeeding season for breeding purposes and discovered in the following spring of 1892 that he was not a success and had not filled the warranty; that he again used him that season and again saw by results that he was not a success. In April, 1892, more than a year after the purchase, he testified that he went up to Chariton, Iowa, to tell plaintiff that the horse had failed and that he could not meet his note, then coming due in June; but it is quite evident from all his testimony that he did not mean to state that he wished or offered to rescind, but rather to excuse his non-ability to meet the notes. He never offered to return the horse. He says that he offered both horses and the account books for service, to plaintiffs, but this, of course, had reference to paying or settling the notes and not to the assertion of a right to annul the contract for fraud. This, too, appears beyond question from other portions of his testimony. For instance, he paid $50 on the notes in June, 1892, more than a year after his purchase, and at a time when he knew of the horse's failure the first season. Again, he testified that when he went to see plaintiffs in 1893, he told them, or the bank officers, that he would pay as fast as he could collect. Besides this, he wrote to plaintiffs in February, 1893, asking them to "knock off all interest," that he expected to pay them and that he was trying to sell the horse. In the light of the instructions given for plaintiff connected with the testimony of defendant, it is apparent that the verdict for defendant was the result of a failure to apply well recognized principles of law

to the facts, doubtless caused by that natural sympathy for one who finds himself overburdened with debt. But in a case where the whole evidence in behalf of defendant himself shows that his conduct was exactly the opposite of what it should have been, had he desired to take another horse under the warranty; or, had he desired to rescind and annul the contract for fraud, we can see no possible ground upon which a verdict for him can stand. We are, therefore, compelled to reverse the judgment. We will also remand the cause, since defendant contends that he may yet obtain relief on other grounds than rescission, though as to such contention we have made no examination. All concur.