INGALS, *Appellant*, v. FERGUSON; ALEXANDER, *Administratrix.*

### Division Two, March 23, 1897.

1. **Married Woman:** SCHOOL TEACHER: SEPARATE ESTATE.    The wages of married women for teaching school by the Missouri statute become her separate estate, and the property purchased therewith retains its character as her separate estate.

2. **Replevin:** RIGHT OF A MARRIED WOMAN AND PURCHASERS FROM HER. Where the evidence shows that a mare was bought by a husband for his wife and paid for by him with her money, and afterward sold by the husband to the plaintiff, an instruction that if the jury believe from the evidence that said mare was the property of such married woman, and that plaintiff secured a deed from her husband only, and has not secured the title of such married woman, they must find for the defendant, is proper.

3. ———: ———: ESTOPPEL.    The fact that the husband delivered the mare to the plaintiff as a pledge to secure money to pay a part of a mortgage made by both the wife and husband, accompanying the pledge with his sole bill of sale, and that plaintiff kept the mare for six months, and during that time the wife twice saw the horse in plaintiff's possession and remarked upon her improved condition, does not estop her or her purchasers from setting up claim to the horse, although the money was never paid, and although the mare was returned to the husband under a distinct agreement from him that she should still be the plaintiff's property.

4. **Replevin:** JOINT OWNERS: PRACTICE.    One joint owner of personal property can not maintain replevin against his co-owner; but if such joint owner resort to replevin and obtains an order of delivery and by means thereof obtains actual possession of the joint property, and at the trial is defeated in his action, the judgment must restore to the defendant the property obtained by means of the replevin writ or process.    (*Cross v. Hulett*, 53 Mo. 397, reviewed.)

*Certified from St. Louis Court of Appeals.*

JUDGMENT OF CIRCUIT COURT AFFIRMED.

*George S. Grover* for appellant.

(1) The plaintiff was entitled to recover in this action, because the animal in question was clearly partnership or joint property, and, therefore, one of the partners, or joint owners, the husband, had a perfect right to dispose of it. Secs. 6864 and 6869, R. S. Mo. 1889; *Picotte v. Cooley*, 10 Mo. 313; *Childress v. Cutter*, 16 Mo. 24; 3 Am. and Eng. Ency. Law, p. 358; *Lindell v. McNair*, 4 Mo. 380; 9 Am. and Eng. Ency. Law, p. 840; *Woodford v. Stephens*, 51 Mo. 443; *Kinealy v. Macklin*, 89 Mo. 433; *Weil v. Simmons*, 66 Mo. 617; *Sloan v. Torry*, 78 Mo. 623; *McCoy v. Hyatt*, 80 Mo. 130; *McFerran v. Kinney*, 22 Mo. App. 554; *Hemelreich v. Carlos*, 24 Mo. App. 264; *Wortman v. Price*, 47 Ill. 22; Stewart on Husband and Wife, sec. 480, and cases cited; *In re Kinkead*, 3 Bissell, 405; *Newman v. Morris*, 52 Miss. 402; *Reiman v. Hamilton*, 111 Mass. 245; *Zimmerman v. Erhart*, 58 Howard Pr. 11; *Graff v. Kinney*, 37 Hun, 405; *Warrell v. Forsythe*, 141 Ill. 22. (2) The wife acquiesced in and ratified this transaction, and is therefore estopped from now questioning it. Nor can any such question be raised by purchasers claiming under her. 14 Am. and Eng. Ency. Law, 645; Stewart on Husband and Wife, sec. 129; *Pauley v. Vogel*, 42 Mo. 291; *Flesh v. Lindsay*, 115 Mo. 1; *Dann v. Cudney*, 13 Mich. 239; *O'Brien v. Hilburn*, 9 Texas, 297; *City v. Van Roven*, 2 McCord (S. C.), 465; *Early v. Rolfe*, 95 Pa. St. 58; *Lindner v. Sahler*, 51 Barb. (N. Y.) 922; *Wertz v. Jones*, 34 N. E. Rep. (Ind.) 1. (3) The real defendant (Alexander) acquired no title to this property under the Peters'

chattel mortgage. *First.* Because the general description upon which Alexander's claim rests was insufficient to pass the title to him, as against the plaintiff. Jones on Chattel Mortgages, sec. 55, and cases cited; 3 Am. and Eng. Ency. Law, 180; *Stonebraker v. Ford,* 81 Mo. 532; *Hughes v. Menefee,* 29 Mo. App. 192; *Chandler v. West,* 37 *Id.* 631.; *Lafayette Co. Bank v. Metcalf,* 29 *Id.* 384; *Muir v. Blake,* 57 Iowa, 662; *Hayes v. Wilcox,* 61 *Id.* 732; *Cray v. Carrier,* 62 *Id.* 535; *Everett v. Brown,* 64 *Id.* 535; *Barrett v. Fisch,* 76 *Id.* 553. *Second.* Because the general description of the mortgaged property, following as it did the specific description in which the mare in question was omitted, could not enlarge or add to such inventory, and therefore its only office was to locate the property specifically described. *City v. Laughlin,* 49 Mo. 559; *City v. Thompson,* 19 Mo. App. 523; *State v. Turner,* 21 *Id.* 324; *State ex rel. v. Taaffe,* 25 *Id.* 567; *City of Hannibal v. Price,* 29 Id. 280; *City of St. Joseph v. Porter,* 29 *Id.* 605; *Mason v. Hannah,* 30 *Id.* 190; *State v. Grisham,* 90 Mo. 163.

*C. M. Napton* for respondent.

(1) The mare was not partnership or joint property of Green and wife and hence appellant's first point is not well taken. As it appears that the jury found this issue for defendant it is not necessary to discuss the legal aspects of a partnership or joint ownership. (2) Even if the wife ratified the transaction, which we deny, still she would not be estopped from questioning it, nor would defendant. The learned counselor for appellant has cited no case from Missouri, since 1879, showing that a wife may be estopped as he claims, and if we should follow the cases cited from other States, we would completely and effectually nullify and repeal our statute that requires the wife's "assent to be in

writing." (3) The general description in the Peters' mortgage of "all stock on the farm" was sufficient to pass title to the mare inasmuch as Alexander was in possession. *Keating v. Hannenkamp*, 100 Mo. 161. (4) In replevin the plaintiff must recover on the strength of his own title and the defendant here showed the stronger title. Green beat Alexander out of $800 and Ingals out of less than $10, because the use of the mare was certainly equivalent to her keeping and the original $100 due Ingals was paid within a few dollars and he had the additional security of two colts which he negligently lost.

GANTT, P. J.—This is an action of replevin for a mare. The appeal has been certified to this court by the St. Louis Court of Appeals, because one of the judges of that court deemed the opinion of the majority to be contrary to previous decisions of this court. Const. Amdt. of 1884, sec. 6.

The plaintiff gave bond and possession of the mare was delivered to him by the officer serving the writ. The jury found the issues for the defendant and assessed the value of the animal at $70 and the damages for detention at $50, and the circuit court rendered judgment accordingly. From that judgment plaintiff appeals.

A new trial was asked on the grounds that the verdict was against the evidence; against the law; against the law and the evidence; is for the wrong party; the court refused proper instructions asked by plaintiff, and gave improper instructions for defendant; admitted incompetent evidence against plaintiff's objections and excluded proper evidence offered by plaintiff.

The following facts were in evidence before the circuit court:

The plaintiff, J. O. Ingals, deduced his title to the

mare in controversy through one E. W. Green, and defendant claims title through both E. W. Green and Mrs. Eliza C. Green, his wife. In 1887 there was an auction sale of stock at the Scott farm in St. Louis county. Mr. Sutton, a member of the auction firm of Lanham & Sutton, testified that he attended that sale. He remembered the mare in controversy was sold that day. Judge Lanham sold the horses and witness made the memoranda of the sale. The entry of the sale of this mare was to Eliza Green. Eddie Green bid it in in her name and her name was entered on the firm books by myself. Mrs. Green was a teacher in the public schools. The payments on account of this purchase were not made oftener than once a month. I got the money from Mr. Green. He told me that they were Mrs. Green's monthly payments as a teacher. There was a note given for the stock purchased by Mrs. Green, joined by her husband, and secured by mortgage, also signed by Green and his wife.

The plaintiff took Green's deposition at Sedalia. It seems that several years after the sale he deserted his family and his evidence for that reason appears in deposition taken at Sedalia. In this deposition he testified: "I bought the mare and the stock out there at the Scott sale. The auctioneers were Judge Lanham and Henry L. Sutton. Lanham called the sale and Sutton wrote it down. I told them at the time I purchased this mare Julia to put her down in the name of my wife, and it was done. All the property I bought there went in her name. She never conveyed that property to me by any instrument of writing. *It is·hers.*"

In 1888 a farm belonging to Green and wife was about to be sold under a deed of trust. The holder of the mortgage debt agreed that if Green would pay him a "$100 on the note he would wait." Thereupon borrowed that amount from the plaintiff Ingals, who

testifies that in March, 1888, Green gave him an abso-
lute bill of sale of the mare on the condition that he
was to have her back when he paid the $100, and the
mare's feed at $15 per month.   This bill of sale was
not produced.   Plaintiff stated that it was lost.   Under
this arrangement he kept the mare six months and
Green said to him:   "She is eating her head off."
"Send her out to the country and she shall still be yours
and I will make a note for $200 which will cover the
feed bill, and the balance I owe you, and I will give
you a mortgage on two two-year-olds for security."

Plaintiff agreed to this and returned the mare to
Green.   Green paid plaintiff $90 on this indebted-
ness, according to his evidence, but according to Wil-
liam F. Green's testimony, plaintiff told him he was
fully paid.   William also testified that E. W. Green,
his father, did $102 worth of tailoring for plaintiff.

The only evidence tending to show that Mrs. Green
knew of her husband's mortgage or sale of the mare
to plaintiff is found in the statement of plaintiff that:
"She knew the mare was in my possession the first six
months from March to September, 1888, because I drove
out there once or twice with her and she noted her con-
dition, saying she was looking better.   She made not
the slightest objection to my possession of the mare."
Whether plaintiff knew of Mrs. Green's claim does not
appear from the testimony.

The original defendant deduced title in the follow-
ing way:   He was merely the bailee of Mr. R. N. Alex-
ander, who has since died, and whose wife and his
administratrix has been substituted in the case as de-
fendant.   On the eighth of May, 1890, Green and wife
executed a chattel mortgage to secure the payment of
certain indebtedness due from them to F. W. Peters.
The mortgage described various farm machinery, cer-
tain mules, Jersey cows, household and kitchen furni-

ture, plate and glassware and concluded with these words, "all the stock and all implements on the farm known as Evergreen Farm, in section 31, township 45, range 6, one mile west of Webster in Central township, St. Louis county, State of Missouri." Soon after the execution of this mortgage to Peters, Green absconded, leaving wife and creditors behind. Among these creditors was Mr. R. N. Alexander.

In order to save his own debt Mr. Alexander purchased the Peters debt and mortgage, and took possession of all the mortgaged property, claiming the mare in question as a part thereof. At the mortgage sale of this property Mr. Alexander bought the mare for $150. The plaintiff Ingals was present at the sale and gave notice of his claim to the mare. Shortly after Green left Mr. Alexander *also got a bill of sale from Mrs. Green conveying her title to the mare* and all other property on the farm. He gave her $50 and all the household property as a consideration for the bill of sale.

Among other instructions the court gave the following for the defendant:

"The jury are instructed that if they believe from the evidence that said mare was the property of Eliza C. Green and that plaintiff secured a deed from E. W. Green only, and that he has not secured the title of Eliza C. Green, then they must find for defendant."

The propriety of this instruction as applied to the foregoing evidence caused a difference of opinion among the judges of the St. Louis Court of Appeals. On the one hand it is insisted, *first*, that there was no substantial evidence that Mrs. Green was the *sole* owner of the mare in suit, and, *secondly*, that if she had an interest it was joint and her vendee could not maintain replevin for this undivided interest. *Third.* It was objected that the instruction ignored the evidence of estoppel in the case. Of these in their order.

We think there was much evidence of *sole* owner-
ship of this mare by Mrs. Green.   The plaintiff intro-
duced E. W. Green as a witness, and thereby vouched
for his credibility.   He testified that when he bid off
the mare at Scott's sale, he instructed Mr. Sutton to
put her down in Mrs. Green's name, and this was done.
He testified further:  "She," meaning his wife, "never
conveyed that property to me by any instrument in
writing.   *It is hers.*"   Moreover, this witness testifies
he used his wife's money in part in payment of this
stock, and in this is corroborated by Mr. Sutton, who
says Green told him as he made the various monthly
payments, that it was his wife's money she had earned
by teaching school.   These declarations of Green long
before any controversy had arisen, and accompanying
the act of payment itself, would certainly be most con-
vincing evidence against Green had he attempted to
deny his wife's title, and was evidence against plaintiff
who claimed under and through Green, and was re-
ceived without any objection thereto.

Her wages as teacher by our statute became her
separate estate, and the property purchased therewith
retained the same character of estate in law.   It must
be borne in mind that no fraud is charged.   But it is
urged that Mrs. Green did not pay all the purchase
price for the stock bid off in her name.   The record is
very unsatisfactory as to the whole payment, but it
does not show that the husband paid any considerable
part of it.   Granting that he did put a part of his own
earnings into the property which he had by his own
unequivocal act notified the auctioneers was her prop-
erty, this would not defeat her title save at the instance
of some creditor of Green, who could follow the prop-
erty to the extent his money went into it.   It is not
open to attack in this case under the pleadings.   The
transaction is entirely consistent with an honest purpose

upon his part to give her whatever sum of his own money he contributed to the purchase of the stock, without, in any manner, intending to assert a title therein in himself. We hold there was much evidence tending to show this mare was the wife's sole property, and hence there was no error in submitting that phase of the case to the jury. It follows, moreover, that if the jury found that it was the wife's property, then her husband's bill of sale conveyed no title to plaintiff, and as it was conceded he had no title from Mrs. Green, plaintiff must fail.

2. But it is objected, moreover, that the instruction is faulty in ignoring the estoppel which was disclosed by the evidence. We think every essential of an estoppel *in pais* is wanting in the case.

The bare fact that several years previous to the bringing of the suit plaintiff had obtained possession of the mare from Green, and had driven her to Green's house on one or two occasions with the knowledge of Mrs. Green, can not work an estoppel. Plaintiff nowhere testified to any other knowledge by Mrs. Green of the conditional sale of the mare by her husband to him.

Mrs. Green was a lady engaged in teaching. For aught that appears, she might well have thought plaintiff had the mare for breeding or for training, especially as at the end of six months he returned her, and the mare then remained continuously on the Evergreen farm without the slightest claim or act of ownership by plaintiff. A much stronger estoppel could have been urged against plaintiff by Mr. Peters, who took the mortgage, and by Mr. Alexander, who bought the mortgage and took possession of the mare, without any notice of plaintiff's claim. It goes without saying that Mrs. Green's act in sending the form of a bill of sale to her husband to be executed long after this suit

was instituted, had no element of estoppel in it, as it in no manner induced plaintiff's action in acquiring the mare or bringing the suit. Her compliance with his request at that late day could not have influenced his transaction several years prior thereto.

3. Inasmuch as the members of the court of appeals differed in the construction of the decision of this court in *Cross v. Hulett*, 53 Mo. 397, we will restate the decision in that case.

John A. Cross, Stephen Hulett, and Mrs. Beckett jointly owned a cane mill, skimmer, and pans. Cross asserted that Hulett had sold him his interest in the property which transfer was denied by Hulett. Thereupon Cross sued Hulett by replevin before a justice of the peace, and Hulett obtained a verdict and judgment. In the common pleas court on appeal Hulett again obtained a verdict and judgment "for the recovery of the property sued for, as well as costs." This court held that as there was no pretense that Cross had ever sold his interest in the property, a judgment giving defendant Hulett possession of the property was erroneous, irrespective of the instructions, because replevin did not lie by one joint owner against his co-owner for the obvious reason that neither was entitled to exclusive possession of such property.

The opinion in that case does not show whether an order of delivery had been made, and possession taken under it, but had there been a taking of the property by the constable or sheriff and a delivery to Cross, still the judgment was erroneous, which would have deprived Cross of his joint right of possession irrespective of whether he had obtained Hulett's interest or not. The full extent to which the judgment could have gone would have been a restoration of Hulett to his joint possession, lost by the execution of the order of delivery. But that case is not like this. In this

case plaintiff obtained possession of this mare by vir-
tue of an order of delivery. He had no other posses-
sion. Having obtained the possession by means of his
writ of replevin and having been defeated on this
claim at the trial, he now asserts that defendant can
not have a judgment restoring the possession thus
taken because one joint tenant can not maintain re-
plevin against his co-owner. It is conceded by the
majority of the court of appeals that if Mr. Alexander
obtained the full title to the mare the judgment was
right. But they say: "Assuming that Green sold his
interest in the mare to the plaintiff, and that Mrs.
Green still holds her interest, the defendant would be
entitled to a judgment for costs." In other words,
although one joint owner can not maintain replevin
against his co-owner, for the possession of joint prop-
erty, he may maintain the possession wrongfully ob-
tained by the writ of replevin after he has been
defeated in such action.

With the utmost respect for our brethren of the
court of appeals, we must say we can not subscribe to
such logic. *Cross v. Hulett, supra*, is not authority for
such a position. The position is absolutely contradic-
tory. It sanctions the taking and obtaining of the
possession of joint property held by one joint owner
by his co-owner by means of the writ of replevin, and
in the same breath asserts that replevin can not be
maintained in such a case. It permits and approves
that which it condemns as a legal solecism. We hold
that in this case the jury found that defendant was
entitled to the sole possession of the mare in contro-
versy, and there was sufficient evidence to justify that
finding; that there was no partnership between Green
and wife in the mare; that Mrs. Green was not
estopped, neither are those who purchased the mare
from her. We hold, moreover, that while it is true

that one joint owner can not maintain replevin from his co-owner of joint property, yet if he does resort to replevin and obtain an order of delivery and by means thereof obtains actual possession of the joint property, and is defeated in the action, the judgment must restore to the defendant the property obtained by means of the writ or process. The courts are not without power to restore the *statu quo* which is disturbed by one tenant wrongfully obtaining a writ of replevin and taking joint property from his co-owner. Nothing less than a judgment for the property, or for his joint right therein, would restore to the successful defendant the possession of his property taken from him by a writ improvidently granted, and nothing less would preserve the spirit of the law itself. Cobbey on Replevin, 672; Jacob's L. Dic., p. 500.

The judgment of the circuit court is affirmed. SHERWOOD and BURGESS, JJ., concur.