J. W. MILLER, Appellant, v. L. P. CRIGLER, Respondent.

St. Louis Court of Appeals, February 27, 1900.

1. Counterclaim: PLEADING AND PRACTICE: STATUTORY CON-STRUCTION. Under the first statutory subdivision of section 605, R. S. 1889, a counterclaim may be filed by a defendant who is entitled to a several judgment against the plaintiff whenever the cause of action, set forth in the counterclaim, arises out of the contract or transaction stated in the petition.

2. ———: ———: ———. And it is immaterial whether the cross suit is legal or equitable in its nature, or is based on liquidated or unliquidated demands.

3. ———: ———: ———: FRAUD: DAMAGES: PRACTICE ACT. A counterclaim for damages caused by fraud in a sale to several persons can not be filed by one of the purchasers on his own behalf.

4. ———: ———: ———: JURY, SUBMISSION TO. In the case at bar the counterclaim filed was invalid and should not have been submitted to this jury.

5. Personal Property, Joint Ownership of: ACTION: PLEADING AND PRACTICE: CONVERSION: REPLEVIN. A joint owner of personal property has no right, even in an original action, to sue severally for its conversion, or to replevy it from his co-owner.

Appeal from the Audrain Circuit Court.—*Hon. Elliott M. Hughes*, Judge.

REVERSED AND REMANDED (*with directions*).

*Fry & Clay* for appellant.

(1)   In a suit on a promissory note, or contract, damages arising out of tort can not be set up as a counterclaim. Gant v. Duffy, 71 Mo. App. 91; R. S. 1899, sec. 2050.   (2) The answer is not in equity and does not ask for a rescission of the contract.   It alleges the contract void because of fraudulent representations.   It alleges that the defendant rescinded the contract in January, 1898, after the $492.50 had passed in third parties' hands.   We insist there was no rescission, but only an offer to return what he had received if plaintiff would return what he had received.   An application for rescission of a contract is no rescission.   Ricat v. Douglass, 46 Mo. 497; Brockhaus v. Schilling, 52 Mo. App. 80, 81.   (3)   When a party seeking to rescind a contract of sale or purchase has received anything of value thereon, it is a condition precedent to his right of recovery that he return whatever he may have received.   Poe v. Stockton, 39 Mo. App. 550; Cohn v. Reid, 18 Mo. App. 115.   (4)   There can be no involuntary rescission—no rescission against the will of the party to the trade—unless he can put in *statu quo*, but the party, who otherwise might have the right of rescission, is remitted to his action at law for damages for the deceit.   Brockhaus v. Schilling, 52 Mo. App. 82; Robinson v. Siple, 129 Mo. 208.   (5)   Nor can a contract be rescinded in part.   The deed to the state of Tennessee was executed to Crigler and Powell, and the latter is not a party to this action.   Defendant owns only an undivided one-half in the property contracted, and it was out of defendant's power to restore plaintiff to *statu quo*.   The $492.50 note was given by Powell with defendant as surety.   Milton v. Smith, 65 Mo. 315; Robinson v. Siple, 129 Mo. 208.   (6) We therefore insist as there was not and could not have been a rescission of this contract in this action, defendant's only

remedy was to affirm the contract and resort to an action at law for damages for fraud and deceit.   (7)   If defendant was damaged and could counterclaim his unliquidated damages, then what was the measure of damages?   It would be the difference between the value of the property, if the representations of the plaintiff, which induced him to purchase it, had been true, and the value as it actually turned out to be.   Brockhaus v. Schilling, 152 Mo. App. 83; Courtney v. Boswell, 65 Mo. 196; Haynes v. Churchill, 29 Mo. App. 683.   We insist the defendant's peremptory instruction directing the jury to return a verdict for $582.50, the full amount claimed, was erroneous.   (8)   The instruction was given on the theory that fraudulent representations were a complete defense to the action on the note or rescission, which was error.   Brockhaus v. Schilling, *supra*.   In case of a rescission of the contract the vendee is entitled to recover back the purchase money, but not otherwise.   But not so when there is or can be no rescission.   Walls v. Gates, 4 Mo. App. 5.

*W. C. & J. C. Jones* and *Crigler & Jones* for respondent.

(1)   A part owner of personal property may maintain trover for its conversion.   38 Am. Dec. 508; Delaney v. Root, 99 Mass. 546; Burbank v. Crocker, 7 Gray 158; 66 Am. Dec. 470; Hyde v. Noble, 13 N. H. 494; 26 Am. & Eng. Enc. [1 Ed. ], p. 750.   (2)   It is not essential that the absolute title be in the party seeking to maintain trover; it is enough if he stands in such relation as to be entitled to the possession of it, or will be liable to the owner, ultimately, for its value.   Gillett v. Fairchild, 4 Den. (N. Y.) 80; Tuthill v. Wheeler, 6 Barb. (N. Y.) 362; 26 Am. and Eng. Enc., p. 744, art. 3, sec. 1.   (3) A party having a general interest in property is allowed to recover against the general owner.

but only for the specific interest; but, as against a wrong-doer, the whole value may be recovered, and the joint owners can account to each other. Angier v. Taunton, 1 Gray (Mass.) 621; Herker v. Dement, 9 Gill. (Md.) 7; Burk v. Webb, 32 Mich. 173. (4) This doctrine is also true in replevin. Replevin may be maintained by one co-tenant in his own name without joining his co-tenant. Ferguson v. Rafferty, 128 Pa. 337. (5) One tenant can bring an action for damages without making his co-tenants (partners) parties. They are not necessary parties. Morgan v. Hudrell, 52 Ohio St. 552. A co-tenant may sue separately for injury to his estate. Jordan v. Benwood, 42 W. Va. 312. (4) "If a party intentionally misrepresents a material fact, or produces a false impression in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage, this constitutes positive or actual fraud, in the truest sense of the term." Bank v. Crandall, 87 Mo. 211. If the fraud be such that, had it not been practiced, the contract would not have been made, then it is material. Whether material, is a question for the jury. McAleer v. Horsey, 35 Md. 439-452; Crossland v. Hall, 33 N. J. Eq. 111. (5) "A joint owner of a chattel may maintain trespass for his separate interest, and the defendant can not take advantage at the trial of the non-joinder of the other parties, but must plead in abatement." 26 Am. and Eng. Ency. of Law [1 Ed.], p. 750.

BOND, J.—Action by the payee against the maker of a note for $306.25, dated thirtieth of November, 1897, due one day thereafter. The defenses relied upon, are, first, that the note was a part of the consideration of a contract (executed by the principal, J. D. Worley, for whom it is alleged plaintiff acted as agent), which contract conveyed to defendant and B. A. Powell, jointly, the right to sell, in a particular territory, churns made under a patent issued to

Miller v. Crigler.

the grantor, and which it is averred was obtained upon fraudulent representations, and on that account was rescinded. The answer next sets up a counterclaim predicated upon the right to rescind the contract of sale of territory of defendant and Powell, and to recover back the consideration which had been parted with by the grantees. The counterclaim alleged that the entire consideration for the sale of the territory was $1,225, which was paid by the two grantees in the following manner; that defendant paid $47.75 in cash and cancelled a note which he held against Worley for $42.50, and gave the note in suit, to wit, $306.25, and further assumed to pay an indebtedness of $216 owing from Worley to defendant's sister, and secured by mortgage on the land of said Worley; that the remainder of the consideration was paid by B. A. Powell, to wit, cash, $120, and the negotiable note of said Powell for $492.50, and also signed by defendant as surety, which latter note the counterclaim alleged had been transferred by J. D. Worley, the payee, for value before maturity, wherefore defendant prayed judgment for the amount of said note and the three items of $47.75, $42.50 and $216.

Issue was taken by a reply. A trial was had. The jury returned a verdict in favor of defendant upon plaintiff's cause of action, and also in favor of defendant upon his counterclaim for $617.70. Plaintiff appealed.

I. Appellant complains of the use by the court in its instructions for defendant of the terms "material" and "immaterial" as applied to the representations made by plaintiff. This error can not be invoked in this case, since the record shows that appellant invited it by employing the same terms in the instructions which the court gave for him. Whitmore v. Ins. Co., 100 Mo. loc. cit. 47. Neither was there any error in the admission in evidence of the letters from the manufacturer of the churns to plaintiff show-

ing the price for which it had proposed to furnish them. The gravamen of the fraud charged was intentional deception by plaintiff as to the price for which a particular manufacturer had agreed to supply churns made according to the patent issued to Worley. To prove this allegation defendant insisted upon the right to offer in evidence all the letters bearing on the price of the churns which the said manufacturer had written to plaintiff, and which were in his possession when the contract for the sale of the territory was consummated. The purpose of this evidence was to show by later letters from the manufacturer that a price stated in its former letters to plaintiff had been withdrawn, and a higher one substituted. In view of the further evidence showing that plaintiff exhibited the earlier letters to him as the basis of his representations made at the time of sale of the cost of manufacturing, it was clearly competent to adduce in evidence the subsequent letters from the same manufacturer which showed that a greater price was subsequently demanded. For if this was true the triers of the fact were at liberty to infer a conscious deception by plaintiff as to the cost of manufacturing the churns. Neither was such evidence objectionable as hearsay. One of the recognized exceptions to the exclusion of hearsay evidence, arises when the question is not whether the evidence sought to be introduced is true or false, but is only as to the existence in fact of such evidence. 1 Greenleaf on Evidence [16 Ed.], sec. 100. So in this case it was wholly immaterial what was the real cost of making the churns, but it was material to ascertain whether or not the plaintiff made a truthful representation of the price given to him in the letters from the manufacturer, and to determine this it was clearly competent to adduce the letters received by him prior to a sale made upon the faith of his statement of the price which whould be charged by the manufacturer. Appellant's ex-

ception to this evidence was therefore properly overruled.

II.   Appellant also ·denies the right of defendant to rescind the contract for which the note in suit was a part payment.   It is the settled law that a rescission of contracts may be made in three ways:   First, by agreement of the parties; secondly, by a warrantee for breach of warranty; thirdly, as a matter of right in favor of one who has been induced to make the contract, by mistake or fraud.   Where a contract has been procured by fraud, the injured party is entitled upon the discovery of the fraud, to restore what was received, and recover what was paid under the contract. Such rescissions are matters of absolute right and are grounded on the legal nullity of the contract.   The defrauded party has still another remedy.   He may affirm the contract and have his action for damages occasioned by the fraud of the other party.   Mfg. Co. v. McCord, 65 Mo. App. 507; Parker v. Marquis, 64 Mo. 38; Melton v. Smith, 65 Mo. 315; Robinson v. Siple, 129 Mo. 208.   In the case at bar the instructions warranting a finding of the rescission of the contract were predicated upon the joint action of defendant and Powell.   That issue was found by the jury in favor of defendant, hence the point made by appellant that defendant alone could not rescind the contract, is not sustained by the record.

III.   The decisive question on this appeal arises upon the counterclaim filed by defendant and the instructions of the court submitting it to the jury.   Under the first statutory subdivision a counterclaim may be filed by a defendant who is entitled to a several judgment against the plaintiff, whenever the cause of action set forth in the counterclaim arises out of the contract or transaction stated in the petition, or is connected with the subject of the action.   R. S. 1889, sec.   605.   If   it   possesses   these   statutory   elements it is immaterial whether the cross suit is legal or

equitable in its nature, or is based on liquidated or un-liquidated demands. Heman v. McNamara, 77 Mo. App. loc. cit. 7, and cases cited. The theory of the present counter-claim is damage caused to the joint obligees of a contract—defendant and B. A. Powell, by the fraud of the obligor or his agent in procuring the agreement. The action of plain-tiff is for a part of the consideration of that contract. The counterclaim though sounding in tort is so connected with the subject of the action as to be within the provisions of the statute, provided it is prosecuted by one who could have a several judgment therefor against the plaintiff, this being the first statutory test of the validity of any counterclaim. In the case at bar it involves the question whether the subject-matter of the counterclaim, viz.: the alleged conversion of certain money and choses in action, constituted a cause of action in defendant's favor against the plaintiff. This ques-tion must be answered in the negative for two reasons. First. B. A. Powell was a joint purchaser with defendant and therefore so united in interest with him as to be a neces-sary party to an action for the conversion of the considera-tion of the rescinded contract. Secondly. Such an action could not, under the pleadings and proofs in this case, be maintained against the plaintiff of record. The grounds of these two conclusions will be discussed in the order stated. As to the first, the contract was made with defendant and B. A. Powell as joint parties. The supervening damage occasioned by fraud of the other party enured therefore to them in the joint capacity in which they had contracted. This joinder of interest of defendant and B. A. Powell as to their vendor was wholly unaffected by the fact that each of them individually contributed one-half of the price paid for their joint ownership, since there is no evidence what-ever that the seller contracted with them individually or otherwise than in the joint capacity expressed in the written

contract. This has been expressly decided by the New York Court of Appeals in a case where the facts were essentially the same as those in the one at bar. In that case (Hopkins v. Lane, 87 N. Y. 501) the action was upon a note given by one of several joint purchasers of a quantity of cheese. The defendant filed a counterclaim for an alleged breach of warranty and fraud in the sale. It was decided that the counterclaim could not be maintained, the court saying: "For the convenience of the purchasers, and with the consent of the sellers, the cheese was paid for by the separate notes properly secured of the purchasers, and after the notes were thus given there remained no joint obligation to pay for the cheese, simply because it had been paid for. Payment in this mode, however, did not affect the contract of purchase or the relation between the parties growing out of the joint purchase. Any claim, therefore, for damages, growing out of the breach of warranty or the fraud, belonged to the three purchasers jointly and could not be used by one of them as a counterclaim." The case cited is based upon the code of civil procedure upon which the Practice Act of Missouri is patterned, and with which the latter is identical in its provisions for counterclaims. The case is therefore of the highest persuasive authority, and unquestionably decides that a counterclaim for damages caused by fraud in a sale to several persons can not be filed by one of the purchasers on his own behalf. The doctrine of the above case narrows the inquiry on the point under review to one question, to wit, whether the joinder in interest of co-purchasers held to subsist when one, of them seeks to counterclaim for damages caused by fraud in the sale, also subsists when one of the vendees seeks to counterclaim for a conversion of a part of the consideration of the fraudulent sale? For respondent correctly insists that his counterclaim is for the conversion of part of the consideration of

the sale, and not for damages to the thing sold. The answer to the question is, that the status assumed by adversary parties in their express contracts necessarily determines their legal relationship to each other. For if this were not true in the case at bar we would have a joint contractee continuing such if he adopted one remedy for the fraudulent sale and becoming a several contractee if he adopted another remedy for the same legal wrong. Such a result is inadmissible under the elemental legal principles which define the status of parties to contracts according to the capacity, whether joint or several, which they assume in their dealings, and which do not permit them to sue in a different capacity from that in which their adversaries contracted with them. The title to the benefits of a contract, or to damages caused by the contract, depends upon the nature of the agreement, and not upon the remedies employed for redress. As defendant did not become dissevered as a co-contractee with B. A. Powell, by merely selecting one of the two remedies afforded by the fraud of the contractor, it must follow that the subject of the counterclaim in this case was one, to the assertion of which B. A. Powell was a necessary party, under the statutes requiring the joinder of all persons as plaintiffs who are united in interest in the subject of the action, and that, Powell not being a party to the record, the counterclaim filed by defendant on his own behalf, embraced matters as to which he was not entitled to a several judgment against the plaintiff, and therefore was under the ban of the Practice Act, and was not available as a form of redress in this case. R. S. 1899, sec. 544 and 605; Little v. Harrington, 71 Mo. 391; McLaran v. Wilhelm, 50 Mo. App. loc. cit. 661.

IV. As to the second conclusion, that the counterclaim in this case can not be maintained against the plaintiff of record. In support of this it is only necessary to repeat

that the counterclaim is for a conversion of specific effects, not for deceit and fraud impairing the value of the thing sold, and hence the cause of action therein alleged would only lie against the person or persons guilty of the conversion charged. Both the pleadings and the evidence establish that the conversion charged was the act of Worley (who is not a party to the record) and not the act of the present plaintiff; that the note alleged to have been converted was payable to Worley and that the conversion arose by his transfer of the note before maturity to an innocent purchaser for value; that it was to him that the $47 of indebtedness to defendant was released, and that it was his (Worley's) debt to another person which defendant assumed to pay, and that it was to him, through his accredited agent, that the $47.75 of cash was paid by defendant. It is clear therefore that if there has been any conversion, as alleged in the counterclaim, that Worley is the man who is guilty and who is responsible in damages. The present plaintiff had nothing whatever to do with any of the matters embraced in the counterclaim, except to receive for his principal the $47.75 cash. In no event could the present plaintiff be held for a conversion of the consideration which was paid by defendant to a third party, Worley. The only theory upon which the present plaintiff could be held liable is, that he was a tortfeasor in the fraud in procuring the contract, and therefore liable, despite the fact that he only acted as agent for another, in an action for deceit for damages caused by the fraud in which he participated. Hamlin v. Abell, 120 Mo. loc. cit. 199. But the counterclaim is not framed for a recovery of that sort, and and if it were, as has been shown, Powell would be an indispensable party. Hopkins v. Lane, supra. It follows that from every standpoint the counterclaim filed in this action was invalid and should not have been submitted to the jury.

It is argued for respondent that defendant, as joint owner of the personal property described in the counterclaim, would be entitled in his own name to sue therefor, and hence to counterclaim. This argument overlooks the distinction between an original action and the right to file a counterclaim. The latter is always confined to matters as to which there may be a several judgment between the defendant and the plaintiff, and there is no statutory authority in this state to add new parties to a record, in order to file a counterclaim. Another objection to the above contention is, that it is based upon a misconception of the law governing the right to sue for the conversion of joint property. According to the common law, the text writers, the weight of authority elsewhere, a statute, and the repeated decisions in this state, a joint owner of personal property has no right, even in an original action, to sue severally for its conversion, or to replevy it from his co-owner, or the assignee of a co-owner, or a stranger. R. S. 1899, sec. 544; Little v. Harrington, *supra*; Spooner v. Ross, 24 Mo. App. 603; Kimerick v. Castleman, 23 Mo. App. 493; Cobey on Replevin, sec. 229; Freeman on Co-Tenants, sec. 289; Pulliam v. Burlingame, 81 Mo. 111; Cross v. Hullett, 53 Mo. 397; Ingals v. Ferguson, 138 Mo. 358; Collier v. Yearwood, 5 Baxter (Tenn.) 581; Pickering v. Pickering, 11 N. H. 141; Hackett v. Potter, 131 Mass. 50; McArthur v. Lane, 15 Mo. 245.

V. For the foregoing reasons the judgment in favor of defendant on the counterclaim can not be sustained; but it would also have to be reversed if it had been filed by the proper parties, on account of error in the instruction given of the court's motion, which told the jury that if they found on the counterclaim in favor of defendant, they should return a verdict for the two items of cash and credit paid by defendant, and also for the note for $492.50 given by B. A.

Miller v. Crigler.

Powell and signed by defendant as surety. This note was negotiated to third persons, but it is not shown that the maker is insolvent, or that the defendant has paid it, or has suffered judgment in an action thereon. Under this state of the record the direction to the jury to bring in a verdict for the amount of said note in defendant's favor was equivalent to an award to him of a sum of money to which he had neither alleged, nor proved any title or ownership whatever. Evidently the theory upon which the instruction was based is that the defendant, because of his suretyship on the note, is liable to the holder who took it in the usual course of trade. That theory might have some force as applied to the rights of the maker of the note after its negotiation, but it has no application to the surety under the facts in this case, for these fail to show that his liability has become fixed as the sole party from whom payment can be exacted. As far as the record shows, Powell, the maker, may be amply able to respond to the note and being primarily liable for it there is no ground to assume that the holder will forego his remedy against the maker in order to enforce it first against the surety. At least he has not done so, and the rule is elementary that in actions to recover for damages occasioned by a contract which has been avoided, the recovery is confined to those actually suffered, or which must be suffered by the party suing, and that it does not embrace mere possible damages. Again, if defendant could recover the amount of the note upon which he was merely surety, it is self-evident that the maker would be entitled to a similar recovery, and hence upon the theory of the instruction, in separate actions by the maker and the surety, the plaintiff in this case would be compelled to pay the amount of the note twice. This is an additional demonstration of the vice of the instruction under review, even if the surety could file a separate counterclaim for the amount of said note. But, as we have

seen, his joinder of interest as to the subject-matter of the counterclaim with B. A. Powell prohibits such separate recovery. This rule, however, does not prevent the defendant from defending an action brought upon his own note, by showing the fraudulent representations relied on in his answer in this case and a joint rescission of the contract. The trial of those issues was had without legal error, and the verdict and judgment in favor of defendant against the plaintiff's cause of action should be allowed to stand; the judgment in defendant's favor on his counterclaim against plaintiff is wholly unsustained by the pleadings or the proof and should be vacated. For a correct disposition of this cause the judgment herein is reversed and the cause remanded, with directions to the trial court to enter judgment in defendant's favor on plaintiff's cause of action, and to enter judgment in plaintiff's favor on the counterclaim filed by defendant.

Judge *Bland* concurs; Judge *Biggs* dissents.

### DISSENTING OPINION BY JUDGE BIGGS.

I can not agree to the opinion of my associates concerning defendant's counterclaim. The facts in reference to it are very simple and I think the applicatory law is equally so.

It may be conceded that the purchase by Crigler and Powell was joint. But the uncontradicted evidence proves that both Crigler and Powell individually assumed to pay for their respective interest in the property bought. Crigler paid $47.75 cash; he surrendered a note he held against Worley (who was the plaintiff's principal) for $42.50; he assumed a debt of $216 due from Worley to Mrs. Duncan, which was secured by a mortgage on Worley's land, and for the balance of the purchase money of his half of the property he gave the note here in suit. Powell paid cash $120, and

gave his note with Crigler as security for $492.50, which paid for his half. Miller as the agent of Worley made the sale to Crigler and Powell, and he received the cash and notes; and the obligation of Crigler to pay the Duncan debt. According to the verdict of the jury, Miller, in making the sale, made false representations concerning the property, which the jury found to be material, and which justified Crigler and Powell to rescind the contract, which the jury found that they did. The contract having been rescinded the only right of action open to Crigler and Powell was for damages, the measure of which was the purchase money with interest. I deny that this claim is a joint one. What interest has either Crigler or Powell in the amount paid by the other, or speaking accurately of the damage suffered by the other? Certainly none. If Crigler and Powell had paid for the property with partnership funds, then I might agree that the cause of action growing out of the rescission and based on the alleged fraud of plaintiff, was joint, for which Crigler alone could not counterclaim or sue. Or, if there had been no rescission and the counterclaim of Crigler had been for damages for deceit by Miller in making the sale, then I might concur in the conclusion reached by my associates. Such a case would come within the reasoning of the decision in Hopkins v. Lane, 87 New York, 501, and cited in the majority opinion. In that case there was a joint purchase of some cheese by three vendees. Each gave his individual note for one-third of the purchase money. The vendor sued on one of the notes, and the maker undertook to recover on a counterclaim based on an alleged breach of warranty in the sale of the cheese. The court of appeals held, that such a right of recovery belonged jointly to all the vendees, and it denied the right of counterclaim to one. The difference in principle between that case and the one at bar, is very clear. In the one case the vendees elected to affirm the contract and to

look to the warranty for the breach of which the measure of damage would be the difference between the value of the cheese had it been as warranted and its actual value. Clearly this damage belonged jointly to all the purchasers. In the case here the measure of damages is the purchase money with interest, and as Crigler and Powell paid for their respective interests with their individual means, it follows that each has a separate cause of action against Miller for reimbursement. I can not imagine how either could have any interest in such a suit brought by the other.

Again, the majority opinion proceeds on the idea that as Worley received the purchase money, Miller, who acted as his agent, can not be held for damages resulting from the alleged fraud practiced by him. The idea of my associates seems to be that the action is for a simple conversion of the purchase money, and that as Worley received the purchase money, he only can be sued. To this I can not agree. The action is for damages growing out of the alleged fraud in the sale, and is based on the rescission. The measure of such damages is the purchase money with interest. Miller can not escape personal liability for his alleged fraud, on the ground that he gained nothing by it. An agent for the sale of the property, may or may not render his principal liable to the vendee for his frauds, but he certainly in all cases fastens a liability on himself. Hamlin v. Abell, 120 Mo. 188.

In my opinion Crigler has a valid claim against Miller for $90.25 and interest, being the amount of cash paid and the amount of Worley's note which Crigler surrendered. He is also entitled to recover the amount of the debt due from Worley to Mrs. Duncan, which he assumed provided Mrs. Duncan has accepted him as a debtor and has changed the status of her debt as to Worley to her detriment. In such a case she could hold Crigler on his promise. Crigler

could only recover as to the Powell note, provided Powell is insolvent and the note (prior to its maturity) had been transferred to an innocent holder. There is nothing in the record to show that Crigler has become absolutely bound to pay the debt due Mrs. Duncan, and there is no evidence that Powell is insolvent, and that the note had been negotiated as suggested. As the recovery on the counterclaim included the Duncan debt and the Powell note, I think the judgment on the counterclaim should be reversed and the cause remanded, with directions to the circuit court to retry the issues presented by the counterclaim.